BOARD OF DIRECTORS OF the SIOUX CITY COMMUNITY SCHOOL DISTRICT, Appellant,

v.

Ames MROZ, Appellee.

No. 63938.

Supreme Court of Iowa.

Aug. 27, 1980.

Rehearing Denied Oct. 9, 1980.

448

Daniel T. Cutler, Gary W. Koch and Marvin J. Klass of Klass, Whicher & Mishne, Sioux City, for appellant.

Harry H. Smith and MacDonald Smith of Smith & Smith, Sioux City, for appellee.

Edgar H. Bittle of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for amicus curiae Iowa Association of School Boards, Inc.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for amicus curiae Iowa State Education Association.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE, and McGIVERIN, JJ.

McGIVERIN, Justice.

Petitioner Board of Directors of the Sioux City Community School District (Board) appeals a district court judgment affirming an adjudicator's decision requiring the Board to reinstate respondent Ames Mroz as a teacher. The main issue for our review is whether the adjudicator's decision was unsupported by a preponderance of the competent evidence in the record made before the Board when that record is viewed as a whole. § 279.18(6), The Code. We conclude that a preponderance of such evidence establishes "just cause" for termination of the teacher's contract under section 279.15(2), The Code. Therefore, we reverse the court's judgment and the adjudicator's decision and reinstate the Board's decision to terminate the contract.

Mroz was a teacher of junior high school science with the school district until the end of the 1977–78 academic year. On March 4, 1978, the superintendent of the district pursuant to section 279.15 formally notified Mroz that the superintendent would recommend that the Board terminate Mroz's contract at the end of the 1977–78 school year because he was an incompetent teacher. The written notice specified fourteen reasons why the superintendent was recommending termination. These reasons may be categorized in four broad areas: inadequate maintenance of discipline during class; excessive and ineffective use of films; ineffective classroom teaching; and failure to improve and cooperate with school administrators who tried to assist in correcting his deficiencies.

Following the notice, the parties used the private hearing and review procedures for teacher terminations in sections 279.15–.18, The Code. The parties agree that all these procedures were properly followed. Mroz requested a private hearing before the school board. After fourteen hours of testimony and hearing, the Board decided that "just cause," as required by section 279.15, existed and voted to terminate Mroz's contract. Mroz rejected the Board's decision and appealed to an adjudicator. § 279.17. In April 1979 the adjudicator reversed the Board and ordered it to offer Mroz a teaching contract for the 1979–80 school year. The Board rejected the adjudicator's decision and appealed by filing a petition for judicial review in the district court under section 279.18. In August 1979 the court affirmed the adjudicator's decision. The Board has appealed to us.

In reviewing the termination of a teacher's contract under section 279.15, we make anew the judicial determinations required by section 279.18. *Board of Education v. Youel*, 282 N.W.2d 677, 679 (Iowa 1979). The Board asked the district court to review the record to determine whether the adjudicator's decision was "unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is viewed as a

whole." § 279.18. All the evidence was presented before the Board. We have reviewed the record, giving weight to the fact findings of the Board as required by section 279.18, and conclude that the adjudicator's decision was unsupported by such evidence. We believe the decision of the Board was supported by a preponderance of the competent evidence. Therefore, we reinstate the Board's decision to terminate Mroz's contract.

A teacher's contract may be terminated for "just cause." § 279.15(2). We have struggled before to define this term. *Youel*, 282 N.W.2d at 680–82; *Briggs v. Board of Directors*, 282 N.W.2d 740, 742–43 (Iowa 1979). Basically, the resolution of each case depends on its own circumstances, which necessitates our thorough review of the record. We also must remember that "a school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance." *Id.* at 743. Professional incompetence or faults attributable to the teacher can be "just cause" for termination. *Id.* at 742.

I. *Evidence of the teacher's incompetency.* Mroz and the Board agree that Mroz had shortcomings as a teacher. While the record contains some evidence to support Mroz's competency, we conclude that a preponderance of the evidence establishes just cause for terminating his contract because of incompetency.

We now discuss the four areas where Mroz was deficient as a teacher. First, he could not maintain discipline in his class. Students and administrators testified that students in Mroz's classes were unusually disruptive. However, many of the same students behaved properly in classes of other teachers. There was evidence that during class students talked, daydreamed, wandered about the room, moved desks, and left the room without permission. Some also exhibited verbal disrespect for him. He did not follow the Teachers' Handbook in coping with discipline problems. Second, Mroz used an unusually large number of films and overhead slides to occupy the class period. Students testified that Mroz showed films as frequently as every other day, often with little preparation or follow-up to test student comprehension. The building principal recommended to Mroz as early as 1975 that "science classes must be more than film classes." The films seemed to be used as a substitute for meaningful teaching and learning processes by the teacher. Third, there is testimony that Mroz did not meet the district's guidelines for use of demonstrations by the teacher and experiments by students in science classes. The principal informally discussed with Mroz the need for more experiments as early as 1975. Finally, a preponderance of the evidence clearly establishes that Mroz did not improve after administrators both informally and formally pointed out his deficiencies and made several offers to help him. Mroz admits in his brief that he treated some recommendations for improvements "a bit lightly."

II. *The teacher's contentions.* To mitigate this evidence of his incompetency, Mroz contends he was ill at the time he received poor evaluations and the principal was biased against him. We examine and reject both of these contentions.

Mroz suffers from high blood pressure. He required hospitalization in February 1978 to treat it. In *Smith v. Board of Education*, 293 N.W.2d 221 (Iowa 1980), we discussed the effect of a teacher's illness when a school board is considering discharge of a teacher under section 279.27, The Code (discharge during contract year with contract termination "effective immediately following a decision of the board"). In *Smith* we decided that mental or physical disability may be just cause for terminating a teacher's contract. Where, however, there is uncontroverted expert testimony that a teacher's incompetence is due to a physical or mental disability, the school board must consider the "duties required by the contract, the character and possible duration of the illness, the needs of the employer and the extent to which the duties can be performed by another." *Smith*, 293

N.W.2d at 224.[1] In contrast, where a teacher's incompetence is not due to a mental or physical disability, the board does not have to consider these criteria. Mroz's case falls into this latter category. Unlike the teacher in *Smith*, Mroz has failed to establish that his incompetence as a teacher was symptomatic of a mental or physical disability. The only testimony on the effect of his high blood pressure on his teaching was given by Mroz. While testifying about his condition, he never stated, or implied, that his incompetency was due to his high blood pressure. He stated that his blood pressure made him feel like he had "bad head congestion, a cold." He experienced shortness of breath but did not know whether it had "anything to do with the blood pressure." He had dizzy spells, but "they didn't last any length of time at all." The only other evidence concerning Mroz's blood pressure was a letter from his doctor, which did not discuss the effect of the high blood pressure on his performance as a teacher. While Mroz's blood pressure may have contributed to his failings as a teacher, there is no evidence that his teaching difficulties were symptomatic of his blood pressure problem. Therefore, *Smith* is distinguishable on its facts from the present case.

■ Mroz also claims his contract was terminated because his principal, George Finzen, was biased against him. We have stated before that "just cause" does not include termination for reasons arising out of a "petty vendetta." *Briggs*, 282 N.W.2d at 743. The bias allegedly stems from unfavorable comments that Mroz made about Finzen in an evaluation during the 1974–75 school year. The comments were made as part of another teacher's project to fulfill the requirements for a master's degree. Mr. Finzen saw a copy of the evaluation but testified he did not know who made the remarks. As the adjudicator noted, there was no evidence that Finzen actually saw comments attributable to specific teachers. While we make no conclusion on the personal relationship that existed between principal Finzen and Mroz, the evidence does not establish that Mroz's contract was terminated because of a "petty vendetta." While Finzen was involved, as a principal should be, in the evaluation of Mroz, Finzen was not the only person to testify about Mroz's deficiencies as a teacher. Testimony from students, parents, and evaluations, after class inspections by Dr. Roger Wendt, assistant superintendent, Robert Kellogg, director of secondary education, and William R. Peterson, science consultant of Area Education Agency 12, corroborated the evaluations and testimony of Finzen concerning Mroz's classes and teaching ability.

The statutory scheme for terminating a teacher's contract places the primary responsibility for deciding whether to terminate the contract on the school board after recommendation from the superintendent. The district court noted that the Board did "yeoman work" in this case. We cannot conclude that the Board's decision was made solely to feed any bias of the principal.

■ III. *Amicus curiae issue.* We now turn to the issue of whether the termination of Mroz's contract violated the master contract between the school district and the teachers. The contract provided that for just cause the Board could freeze the salary of a teacher. Mroz argued before the Board and the adjudicator that this provision required the Board to freeze his salary before terminating his contract. We do not decide this issue because it is not properly before us. Mroz does not argue the issue in his brief. While the Iowa State Education Association argues the issue in its amicus curiae brief, we have stated before that the issues before us must be presented in the briefs of the parties litigating the case. *Sauerman v. Stan Moore Motors, Inc.*, 203 N.W.2d 191, 194 (Iowa 1972).

We have considered all contentions raised by Mroz before us, whether specifically discussed or not, and find them without merit.

---

1. If a teacher's deficiency is caused by a temporary mental or physical condition, the proper course may be to deal with the problem by temporary sick leave rather than termination.

The final judgment of the district court and the decision of the adjudicator are reversed. The decision of the Board terminating Mroz's contract is reinstated.

REVERSED.