Joel L. WEDERGREN, Appellant,

v.

The BOARD OF DIRECTORS, South Tama County Community School District; The South Tama County Community School District; Verna Lacina, President of the Board of Directors, South Tama County Community School District; Leo Benda; Raymond Coleman; and Jerry Koster, Appellees.

No. 65653.

Supreme Court of Iowa.

June 17, 1981.

Rehearing Denied July 9, 1981.

 

Gary L. Robinson of Klinger, Robinson & McCuskey, P. C., Cedar Rapids, for appellant.

Michael J. Moon of Cartwright, Druker & Ryden, Marshalltown, for appellees.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

McGIVERIN, Justice.

Joel L. Wedergren appeals from the district court's decision upholding the school board's action in discharging him from his job as superintendent of the South Tama County Community School District. We affirm the court's decision.

Wedergren was first employed by the school district in March 1977. In 1978 the Board and Wedergren entered into a contract of employment. The contract term began July 1, 1978, and was to be for the three-year maximum allowed by law. § 279.20, The Code 1979.

The Board voted on March 8, 1979, to consider discharging Wedergren from his position. Since the discharge was during the term of the contract, he could be discharged only for just cause. § 279.25. As required by section 279.25, the Board followed the hearing and review procedures contained in section 279.24. The parties agree that the statutory procedures were followed.

A hearing officer, selected by the parties pursuant to section 279.24, held an evidentiary hearing in May 1979. His proposed decision recommended that Wedergren not be discharged. The Board, on its own motion, elected to review the proposed decision. The Board heard the case de novo upon the record made before the hearing officer, and made its own findings of fact and conclusions of law. It then voted to discharge the superintendent. On Wedergren's appeal, the district court affirmed the Board's action. Wedergren has appealed to us.

We must consider the following issues:

(1) Does section 279.24 on its face or as applied to Wedergren deny him procedural due process because of inadequate notice of termination?

(2) Was Wedergren denied the procedural due process right to an impartial decisionmaker because of a combination of functions or the personal bias of some Board members?

(3) Was the decision to consider discharge void because of a violation of chapter 28A, the Iowa open meetings law?

(4) Have substantial rights of the superintendent been prejudiced because Board policies were not followed?

(5) Is the Board's finding of just cause unsupported by substantial evidence?

I. *Adequacy of notice.* Wedergren raises constitutional challenges to the adequacy of notice of the reasons for consideration of termination and, as discussed in division II, the fairness of the hearing before the Board. He claims a denial of procedural due process guaranteed by U.S.Const. amend. XIV and Iowa Const. art. I, § 9.

■ The interests protected by the due process clause are not infinite. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). Procedural due process applies only if a liberty or property interest is implicated. *Id.*

■ In Wedergren's case, we conclude that he had a property interest in his contract and therefore is entitled to due process. At the time of his termination, he was in the first year of a three-year contract. Under Iowa law, the Board was obligated to honor the contract unless it discharged him for just cause during a contract year. §§ 279.24 ("An administrator's contract shall remain in force and effect for the period stated in the contract"), .25 ("An administrator may be discharged at any time during the contract year for just cause"). A superintendent's interest in having his contract term honored, protected by state law, is a property interest under the due process clause. *Roth,* 408 U.S. at 576–77, 92 S.Ct. at 2709, 33 L.Ed.2d at 560–61; *Perry v. Sindermann,* 408 U.S. 593,

601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 580 (1972); *Estabrook v. Iowa Civil Rights Commission,* 283 N.W.2d 306, 310 (Iowa 1979). Having concluded that Wedergren is protected by due process, we must decide whether it was afforded him in this case.

Wedergren first challenges the adequacy of the notice required by section 279.24 and given him in this case.

Once the Board voted to consider discharging him, it had to give him written notice. § 279.25. "The notice shall state the specific reasons to be used by the board for considering termination ...." § 279.-24. Wedergren does not challenge the timeliness or method of notice. *Cf. Smith v. Iowa Employment Security Commission,* 212 N.W.2d 471 (Iowa 1973) (because of breakdown in mail service, requiring appeal within seven days after notice of decision mailed is unconstitutional). Rather, Wedergren challenges the adequacy of the notice. He claims that since neither the statute requires, nor his notice contained, a list of the names of people making accusations and specific factual bases for the charges, he was denied due process. *Brouillette v. Board of Directors,* 519 F.2d 126, 128 (8th Cir. 1975); *Bishop v. Keystone Area Education Agency Number 1,* 275 N.W.2d 744, 752 (Iowa 1979).

■ To comport with due process, a person must ordinarily be informed somehow of the issues involved in order to prevent surprise at the hearing and allow an opportunity to prepare. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287, 299 (1970). The test is fundamental fairness, not whether the notice meets technical rules of common law pleading.

■ The notice required by section 279.-24, and given Wedergren, does not fall short of due process. The statute requires "specific reasons." The Board's notice gave Wedergren a list of ten reasons and specific examples of Wedergren's shortcomings. Of course, the statements could have been made more specific by stating names of accusers and more details on each accusation. Wedergren, however, did not utilize

the discovery procedures afforded him to determine the exact details of the charges or the names of his accusers, if he believed he could not adequately prepare his defense. §§ 272A.8, 17A.13(1) ("Discovery procedures applicable to civil actions are available to all parties"). Wedergren claims he tried to use discovery by making requests for tapes of executive sessions of the Board, which were denied by the hearing officer. He did not attempt any less intrusive means of obtaining the information, such as by written interrogatories, does not challenge the denial of his requests for tapes, and did not request any continuance to prepare. In this situation, we find his due process rights to fair notice were met. No error exists in this assignment.

■ II. *Impartial decisionmaker.* A basic tenet of procedural due process is that a person is entitled to a fair hearing before an impartial tribunal. *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 723 (1975); *Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022, 25 L.Ed.2d at 301; *Keith v. Community School District,* 262 N.W.2d 249, 258–62 (Iowa 1978). Wedergren generally makes two claims: (1) the Board has unconstitutionally combined the functions of investigation, prosecution and adjudication, and (2) three Board members held such animosity towards him that their personal prejudice precluded a fair decision. We do not find a denial of due process.

■ Wedergren's first contention is that the Board has unconstitutionally combined the functions of investigation and adjudication. Prior to the March 8 decision to consider termination, at least some members of the Board heard complaints from people or investigated on their own about Wedergren's performance. This information was then used in deciding to initiate termination proceedings. After the evidentiary hearing before the hearing officer, the Board also decided on the record made before the hearing officer to terminate Wedergren.

In the performance of its duties, and in making the initial decision required by sections 279.24 and .25 to consider termination,

a board must necessarily be exposed to facts or allegations about a superintendent's conduct. In the absence of evidence that a board has prejudged the facts of the case, we will not find a denial of due process by the combination of investigative and adjudicative functions. *Cf. Staton v. Mayes,* 552 F.2d 908 (10th Cir. 1977), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977) (board disqualified because one member made a pledge during campaign to vote to remove superintendent which amounted to prejudgment of factual issues). Ordinarily, some exposure of a decisionmaker to facts in dispute does not automatically disqualify the decisionmaker on due process grounds. *Withrow,* 421 U.S. at 55, 95 S.Ct. at 1468, 43 L.Ed.2d at 728 ("mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing"); *Bishop,* 275 N.W.2d at 752. *See generally,* 3 K. Davis, *Administrative Law Treatise,* § 19:4 (2d ed. 1980). We also do not find a violation of due process when the Board voted to consider termination and also voted to finally terminate. *Withrow,* 421 U.S. at 56–58, 95 S.Ct. at 1469–70, 43 L.Ed.2d at 728–30.

■ To support his argument that there has been an unconstitutional combination of investigation and decision making, Wedergren relies on *Keith.* In *Keith,* however, we were concerned with a different problem. Our primary concern there was that the board, in its ultimate decision to terminate the teacher's contract, had to call solely upon its own personal knowledge of what occurred rather than evidence gathered in an adversary hearing. *Keith,* 262 N.W.2d at 253, 260. In contrast, in Wedergren's case, due to a change in termination statutes since *Keith,* the Board was required to present its evidence at an adversary hearing before a hearing officer. § 279.24. Its later decision to terminate had to be based solely on the record made at that hearing. *Id.; see Von Krog v. Board of Education,* 298 N.W.2d 339, 344 (Iowa Ct.App.1980).

Wedergren also argues that the Board has unconstitutionally acted as prosecutor and decisionmaker. As noted above, it is not a denial of due process merely because the Board initially decided to consider termination and also voted to finally terminate. The vote to consider termination is not a stage in the prosecution of the case. *Keith,* 262 N.W.2d at 261. Rather, an unconstitutional combination of prosecutory and adjudicative functions may occur where the individual who is responsible for presenting one party's case to a decisionmaker also acts as decisionmaker. *See Huber Pontiac, Inc. v. Allphin,* 431 F.Supp. 1168 (S.D.Ill.1977), *vacated,* 585 F.2d 817 (7th Cir. 1978) (prosecutory and adjudicative functions in same individual denies due process); Note, *Due Process and the Combination of Administrative Functions: A Balancing Approach,* 63 Iowa L.Rev. 1186, 1221 (1978).

In Wedergren's case, the Board, although it voted to consider termination as is required under sections 279.24 and .25, did not actually act as prosecutor. The presentation of this case before the hearing officer was done by outside legal counsel. In this situation, we do not find an unconstitutional combination of prosecutory and decision-making functions. *See* § 17A.17(3) (individual who prosecutes or advocates may not make final decision).

The superintendent's final contention is that at least some members of the Board were so personally prejudiced against him that a fair decision was impossible. *See* Davis, *supra,* § 19:5. Although relations were certainly strained, particularly between board member Coleman and Wedergren, we do not find that there was such prejudice to preclude a fair decision by the Board on the evidence presented before the hearing officer.

The Board properly followed the termination procedure prescribed by sections 279.24 and .25. *See Swab v. Cedar Rapids Community School District,* 494 F.2d 353, 354 (8th Cir. 1974). No error exists as to Wedergren's claims in this division.

III. *Violation of open meetings law.* One of the grounds for relief from the action of the school board is where "substantial rights of the administrator have been prejudiced because the board action is . . . affected by other error of law." § 279.24(5). Wedergren contends that some members of the Board held meetings prior to the March 8 decision to consider termination that were in violation of the Iowa open meetings act. §§ 28A.1–.8. He therefore asks us to void any action taken at the March 8 meeting. Voiding the vote to consider termination would mean that the Board has not properly terminated Wedergren. The district court concluded no violation occurred. We decline to void the Board's vote to consider termination.

Wedergren's claim of a violation of the open meetings law is based on the actions of board members Coleman, Koster and Benda. Prior to the March 8 meeting, the three men had several contacts with each other about the possibility of a discharge of Wedergren and the retention of outside legal counsel to accomplish it. With one exception, the contacts involved only two men at one time. Once, while Coleman was in Benda's home, they called Koster. All three could converse because they were all on different phones.

The open meetings law involved here was effective January 1, 1979, and applies to school boards. § 28A.2(1)(a). We will assume, without deciding, that the alleged violations can be raised in this proceeding rather than a separate action.

The legislature has decided to extend coverage of the law only to a gathering of a majority of the members of a governmental body. § 28A.2(2); *Telegraph Herald, Inc. v. City of Dubuque,* 297 N.W.2d 529, 532–34 (Iowa 1980). Any gathering, therefore, of two members of the five-member school board would not ordinarily be a meeting under chapter 28A. *Cf.* 28A.2(1)(c) (a gathering of a majority of a multimember body formally and directly created by another governmental body as defined in section 28A.2(1)(a)–(b) is a meeting).

■ The only possible violation of the open meetings law occurred when Coleman told Koster and Benda over the phone that Coleman had seen, or was going to see, attorney Michael Moon, who was not the Board's regular attorney, for advice as to whether grounds existed to terminate Wedergren's contract. Even if this gathering violated the law, we do not conclude that the Board's action in voting to consider termination was void. Voiding of action taken at a secret meeting is not automatic. § 28A.6(3)(c). The March 8 meeting where the Board vote was taken to consider termination was open to the public and should not be voided simply because on a prior occasion there was a possible violation of the open meetings law.

Finally, we find it unnecessary to decide whether other sanctions should be imposed for violation of chapter 28A. The parties have apparently chosen to litigate the open meetings issue in another action under section 28A.6. It is enough for us to decide that, even if violations occurred, they would not void any action taken by the Board in discharging Wedergren.

IV. *Violation of Board policy.* One of the grounds for relief from the action of a school board is "if substantial rights of the administrator have been prejudiced because the board action is . . . in violation of board policy or rule." § 279.24(3). *Cf. Brumley v. Iowa Department of Job Service,* 292 N.W.2d 126, 129 (Iowa 1980) (involving section 17A.19(8)(c)—violation of an agency rule). Wedergren contends that the Board violated several of its own policies in the events leading up to his termination.

■ One of the written duties of individual Board members of this school district is "to refer complaints to proper school authorities and to abstain from individual counsel and action." Wedergren contends that before the March 8 decision to consider his termination, Board members Coleman, Koster and Benda heard complaints about Wedergren and conferred among themselves. He says that the complaints should have been referred to the entire Board, which was not done until March 8. Koster

admitted that the three members probably did not follow the policy. We conclude that the Board members did refer the complaints to the entire Board because they all participated in the decisions in the formal procedure to discharge Wedergren. Although the complaints could have been referred earlier to the Board, the three members did not take any individual action that prejudiced Wedergren without first going before the Board.

■ Wedergren also contends that Board policy required annual evaluation of his performance, which he did not receive. The policy, which apparently applied primarily to teachers, also stated that "professional employees shall be subject to the appraisal process and the appraisal process shall be designed and implemented by the Board of Directors or its delegates." In December 1977 Wedergren was evaluated after he himself placed the issue of his evaluation on the Board's agenda. It was generally favorable, although the evaluation noted that he could improve in his relations with the Board. In November 1978 members Benda and Koster joined the Board. There was no formal evaluation of Wedergren in 1978 or 1979.

We conclude that the termination of Wedergren without a formal evaluation does not require reversal of the Board's action. The policy does not clearly require yearly evaluations, even though one Board member thought it did. Although some of the Board's complaints might have been resolved by the evaluation procedure, we conclude that the Board's failure to evaluate Wedergren more frequently did not prejudice his rights.

■ Another Board policy requires the Board to hear complaints "relative to written policies, regulations and rules of the school district." This policy apparently only applied to complaints about Board rules and not individual personnel. Persons who complained to individual Board members about Wedergren, rather than following formal complaint procedures, did not violate this policy.

■ Finally, Wedergren contends that Coleman violated Board policy by contacting attorney Moon. Even if this violated Board policy, we do not find any harm to Wedergren. *See City of Des Moines v. Public Employment Relations Board*, 275 N.W.2d 753, 759 (Iowa 1979).

V. *Just cause for discharge.* Wedergren contends the Board's finding of just cause to terminate his contract was unsupported by substantial evidence when the record is reviewed as a whole. Therefore, he argues the district court's affirmance of the Board's decision must be reversed. § 279.-24(6).

The trial court correctly stated the realities under which our school systems, involving a board and a superintendent, operate and which our statutes recognize:

> The Board has the ultimate responsibility for the operation of the school system. This requires, among other things, an active part in the hiring, retention and discharge of employees. This is of particular importance in the Board's relationship to the superintendent. He is an extension of the Board itself; he establishes policy [and also is] concerned with pure administrative rules.... *See Keith v. Comm. School Dist. of Wilton*, 262 N.W.2d 249.

Section 279.25 provides that "An administrator may be discharged at any time during the contract year for just cause." This discharge was during the first year of Wedergren's three-year contract. Therefore, the Board's decision to discharge Wedergren and terminate his contract could only be for "just cause." *Cf.* § 279.24 (termination after contract year of superintendent need not be for just cause). The decision must be supported by substantial evidence.

We have considered the meaning of "just cause" in several recent cases. *E. g., Board of Directors v. Mroz*, 295 N.W.2d 447 (Iowa 1980) (teacher termination); *Smith v. Board of Education*, 293 N.W.2d 221 (Iowa 1980) (teacher termination); *Briggs v. Board of Directors*, 282 N.W.2d 740 (Iowa 1979) (principal-administrator termination); *Board of Education v. Youel*, 282 N.W.2d 677 (Iowa 1979) (teacher termination).

■ We have recognized the flexible nature of just cause and realized that each case "depends on its own circumstances." *Mroz*, 295 N.W.2d at 449; *Cook v. Plainfield Community School District*, 301 N.W.2d 771, 772 (Iowa Ct.App.1980). The term includes professional incompetence and other faults attributable to the employee. *Mroz*, 295 N.W.2d at 449. It means conduct

> which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness. It must include the concept that a school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance.

*Briggs*, 282 N.W.2d at 743.

■ We also recognize a difference in our review standard between teacher termination cases and administrator termination cases. In a teacher case, the board's decision must be supported by a "preponderance of the competent evidence in the record." § 279.18(6); *Youel*, 282 N.W.2d at 682–83. However, in an administrator case, the decision need only be supported by "substantial evidence" of just cause. §§ 279.24(6), .25; *Briggs*, 282 N.W.2d at 744.

In *Briggs* we also discussed the substantial evidence test and concluded that " 'evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion.' While the substantiality of evidence must take into account whatever in the record fairly detracts from its weight, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence [citations omitted]." *Briggs*, 282 N.W.2d at 743.

The hearing officer did not find a preponderance of evidence to support the ten specific allegations in the notice of considera-

tion of termination. However, on the same evidence the Board found to the contrary on six of the alleged failures. The district court found the Board's finding of just cause was supported by substantial evidence.

The Board found a preponderance of evidence in the record established the following allegations against Wedergren: (1) violation of board policies in a) suspending Mildred Emerson, secretary in the administrative offices, without pay, and then reinstating her without reimbursing her for lost pay, which she did not claim because of fear of retaliation by him, and b) failure to inform the Board of the necessity to amend Board policies, because of changes in the law, on child abuse, open meetings, mandatory retirement at age 65, and maternity leave and failure to suggest new policies concerning corporal punishment, staff reduction for administrators and noncertified staff, and acceptance of gifts by Board members; (2) failure to update Board policies, as requested by staff and other administrators, concerning noncertified staff benefits as needed to facilitate contract negotiations with noncertified staff and to remedy obvious disparities between benefits for certified and noncertified employees; (3) neglecting to inquire about the number of Indo-Chinese students in the district to answer a questionnaire from the Department of Public Instruction which, if unanswered, would have resulted in lost revenue to the school district; (4) failure to respond timely to travel requests of two administrators; (5) requiring administrators to refrain from holding meetings among themselves and having private conversations with individual members of the Board; punishment for violation of these rules was "immediate suspension and ultimate termination for insubordination"; and (6) neglecting to properly advise the Board about the procedure for terminating an administrator, resulting in retention of that administrator for an additional year with salary.

The Board's findings indicate that the shortcomings of Wedergren as a superintendent only indirectly relate to the educational program of the school district. Four principals of schools in the district testified that Wedergren was accessible, instrumental in evaluating and improving curriculum and an above-average superintendent from their perspective. Any just cause for termination, therefore, would be for Wedergren's shortcomings as an administrator for the Board or a leader of other administrators and staff.

 Some of the Board's grounds for terminating Wedergren either would not constitute just cause as we have defined it or are not supported by substantial evidence. Just cause is not to be found in every trivial lapse from perfect performance. There must be some significant direct or indirect effect on the educational program or administration of the school system. *Briggs*, 282 N.W.2d at 743. Because we find just cause supported by substantial evidence on other allegations, we need not extensively discuss whether in this case the suspension of Emerson, the initial neglect in applying for funds for the district's Indo-Chinese students, the failure to respond to travel requests and the improper termination attempt of the administrator amount to just cause supported by substantial evidence. Suffice it to say that we doubt whether these allegations alone would support termination, absent a general charge of inattention to duty.

The major complaints against Wedergren were his dictatorial and oppressive treatment of other administrators and office personnel, prohibiting consultation among themselves or with the Board, and his failure to keep the Board informed of needed policy changes or additions. As a result, the Board lost confidence in him. The updated policies were needed to reflect changes in law and to facilitate bargaining with noncertified employees. There was evidence that, after several requests, Wedergren indicated that he would update the policies in the summer of 1978. There was also evidence that this project was not accomplished and so it was scheduled to be done in the summer of 1979 by using building principals to do the work. A reasonable

Board member could find that Wedergren failed to keep the Board informed on needed policy changes. The necessary close relationship between a board and a superintendent requires utmost trust and confidence in the superintendent.

The evidence also shows considerable dissension in the superintendent's office between Wedergren and other administrators and staff. Some staff members took it upon themselves to keep diaries of all of Wedergren's comings and goings and extensive absences from the office. Administrators, particularly Silhanek and Potratz, complained frequently to Board members concerning Wedergren and his alleged deficiencies. We recognize that under our system involving a school board and its superintendent as the main administrator "the board has the final say as to how to best resolve a disruptive situation." *Cook*, 301 N.W.2d at 773; *Youel*, 282 N.W.2d at 684.

We agree with the following statement by the district court: "The Board was faced with a decision which it felt was necessary to the educational integrity of the District. It met that difficult responsibility. The fact that some other person—any other person—might not agree with that decision, or might have found otherwise, does not impair the validity of that decision."

As in *Briggs*, we have reservations whether we would find a preponderance of the evidence in the record supports the termination. *Briggs*, 282 N.W.2d at 744. Our review does, however, find substantial evidence to support the Board's decision to discharge Wedergren. § 279.24(6).

We affirm the district court's ruling.

AFFIRMED.