Larry L. MUNGER, Appellant,

v.

The JESUP COMMUNITY SCHOOL DISTRICT, Appellee.

No. 66874.

Supreme Court of Iowa.

Oct. 27, 1982.

James L. Sayre of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellant.

Steven A. Weidner of Swisher & Cohrt, Waterloo, for appellee.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS and LARSON, JJ.

LeGRAND, Justice.

This is an appeal by Larry L. Munger from a decree terminating his contract as a teacher in the Jesup Community School District. We reverse.

Many of the principles governing our consideration of this matter were first set out in *Board of Education of Fort Madison Community School District v. Youel,* 282 N.W.2d 677 (Iowa 1979) and later discussed in *Board of Directors of Sioux City Community School District v. Mroz,* 295 N.W.2d 447 (1980).

The seven grounds upon which we may grant relief from the termination of Munger's contract are listed in Iowa Code section 279.18. Because of the conclusion we reach, we consider only Munger's claim that the result is unsupported by a preponderance of the competent evidence in the record made before the board.

■ A teacher's contract may be terminated for "just cause." Iowa Code § 279.-15(2). Each case must be evaluated on its own circumstance to determine if just cause exists. *Mroz,* 295 N.W.2d at 449.

We held in *Youel* that just cause includes not only matters attributable to a teacher's faults but includes also legitimate reasons relating to the district's personnel and budgetary requirements. The latter are not present here, and we are concerned only with those faults and characteristics which allegedly disqualify Munger as a coach. *Youel,* 282 N.W.2d at 680.

After being notified of the superintendent's intention to recommend termination of his contract, Munger requested a private hearing before the board. Iowa Code § 279.15(2). At this hearing he was represented by counsel, evidence was taken, and the board made written findings and conclusions. Iowa Code § 279.16. Dissatisfied with this result, Munger requested that the matter be referred to an adjudicator for review. The adjudicator reversed the board's findings. The board appealed from the adjudicator's findings to the district court. The district court, reviewing the record as directed in Iowa Code section 279.18, reversed the adjudicator and approved the action of the board in terminating Munger's contract. Munger then took an appeal to this court.

Before reaching the merits, we mention one other matter. In an effort to resolve this problem, Munger tendered his resignation as wrestling coach but not as a social studies teacher. He claims this should end the controversy because he thus relinquished those duties which were unsatisfactory and agreed to remain as a teacher, rendering only those services about which there was no complaint. The adjudicator agreed with this argument and ordered the board to reinstate Munger to his duties as classroom teacher only.

■ We touched on this matter in *Youel,* but did not decide it because in that case the teacher did not want to remain on those terms. The question is whether Munger could voluntarily resign from only a part of his duties under the contract. In other words, is the contract severable. Although some contracts may be so worded, this one is not. Munger's contract is indivisible, requiring him to render certain services, including coaching duties. Munger cannot unilaterally pick and choose the duties which he wishes to retain and those which he wishes to relinquish. He must render *all* the services required by his agreement. We

believe the adjudicator's decision to the contrary was wrong.

■ Reaching now the merits of this appeal, we note that our task, like that of the district court, is to review the record and to decide if the action of the board is supported by a preponderance of competent evidence when that record is viewed as a whole. *Mroz*, 295 N.W.2d at 448–49. The superintendent has the burden of proof to establish just cause for terminating the contract. *Youel*, 282 N.W.2d at 680.

In discussing just cause in *Briggs v. Board of Directors of Hinton Community School District*, 282 N.W.2d 740, 743 (Iowa 1979), we said:

Probably no inflexible "just cause" definition we could devise would be adequate to measure the myriad of situations which may surface in future litigation. It is sufficient here to hold that in the context of teacher fault a "just cause" is one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness. It must include the concept that the school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance. On the other hand, "just cause" cannot include reasons which are arbitrary, unfair, or generated out of some petty vendetta.

In the case before us, Munger had been employed as a teacher of social studies, assistant football coach, and head wrestling coach for six years. The board's termination of Munger's contract was based solely on dissatisfaction with his handling of the wrestling program. No complaint is made concerning his classroom teaching or his football coaching.

■ This was underscored by the two reasons listed in the notice given Munger of the superintendent's intention to recommend termination of his contract:

1. Failure to maintain a competitive [wrestling] program and to show indication that the program will be competitive in the near future.

2. Failure to maintain rapport with the athletes and failure to properly convince them of the importance of the program.

The board was limited to those reasons in reaching its decision. *Youel*, 282 N.W.2d at 680.

■ The only witness for the superintendent was Leland Jesse, high school principal and athletic director. He testified to dissatisfaction, both within and without the school system, over Munger's handling of the wrestling program. Although Munger was a former outstanding wrestler and had coached the sport for a number of years and although his knowledge of the sport was unchallenged, he was, according to Jesse, unable to motivate his athletes. Interest in the program fell off, the number of participants decreased, and a number of those who dropped out did so because they felt they were not improving. This, in turn, led to complaints by parents and the school Booster Club.

Part of the evidence consisted of two evaluations of the program made in accordance with an established evaluation policy. The first of these rated Munger's performance unsatisfactory in only two of forty-nine categories. The second, gave Munger a "no" rating in eight out of forty-nine categories.

With relation to this second evaluation, Jesse admitted it was made immediately after he met with a group of disgruntled parents. Apparently Jesse was given an ultimatum by this group. He admitted telling Munger the group had met to discuss the wrestling program and that it looks like either "you or Underwood (the superintendent) or I will have to go." Obviously the one chosen for departure was Munger.

The board attempts to bring this case within the *Youel* standards. The circumstances, however, differ from *Youel*. Here there was no personal conflict between

Munger and his superiors. There was in fact a warm feeling of friendship which Munger and Mr. Jesse expressed for each other even during their differences at the hearing. In *Youel,* the teacher repeatedly thwarted and frustrated efforts to improve the football program, refusing to comply with numerous rules and standards of the athletic department and doing all he could to sabotage the program. All of this was detailed in the evidence. Here the opposite is true. Not only did Munger attempt to cooperate, he even offered to resign as coach if that would solve the problem. Thus, we have here, contrary to *Youel,* a teacher who was trying his utmost to do what was expected of him. Although this does not mean his contract cannot be terminated, it is a circumstance to be considered in reviewing his performance.

Significant, too, is the fact that Munger was given no reason to believe his job was in jeopardy until he received notice that the superintendent intended to recommend termination. He was, in fact, tacitly assured whatever problems existed could be worked out. Thus Munger was given no real opportunity to remedy the complaints against him, a circumstance we considered of some importance in *Mroz,* 295 N.W.2d at 449.

Jesse's testimony lacked specificity concerning Munger's deficiencies. It was couched in generalities and conclusion. It assumed Munger was responsible for all the ills of the program. The few instances in which some particularity was given were of a trivial nature. We point to Munger's alleged lack of consistency in disciplinary matters because he allowed one boy who has missed practice to wrestle in a dual meet. There was no rule against this, and Munger testified he had no other one available to wrestle at that weight. Furthermore, this is the kind of decision which the coach, not the board, should make. We note, too, the case against Munger was dependent entirely on Jesse's testimony concerning complaints made by athletes and parents. Yet none of these appeared against him. The superintendent's position would perhaps have been more formidable if they had made their accusations in person rather than through Jesse.

Munger, on the other hand, called four witnesses, in addition to himself. The testimony of each was generally favorable. Munger admitted the program had not met his own expectations and that he was disappointed in the results. This does not necessarily mean he was inefficient or that the program was not "competitive." There are many reasons why an athletic program may succeed or fail at any given time. Some of these reasons were explained by Munger's witnesses. The record is without dispute that Munger knows the sport, both as a participant and a coach. Contrary to *Youel,* there is nothing specific to show that he was inefficient in coaching the program. There was nothing to suggest that those who dropped out because they were "not improving" had the ability to improve, except in one instance, where one of Munger's athletes had gone to another school and had attained great success as a wrestler. Some who dropped the sport did so because of scholastic problems, some for reasons totally unrelated to Munger.

There was evidence that the decline in interest in wrestling was by no means limited to Munger's program, but was rather general throughout the State. There was evidence the "attitude" of the community was destructive of a successful program. Munger's witnesses, three of whom were coaches themselves, described Munger as a competent and dedicated coach. There was evidence, too, that Munger was simply the latest target of an overzealous booster group. Other coaches at the school had met a similar fate, notably a football coach who had "resigned" in mid-season.

Contrary to Jesse's testimony, Munger said he did indeed attempt to recruit athletes, although stopping short of "begging" anyone to participate. He is supported in this by several of his witnesses. The assertion that he failed to maintain rapport with his athletes is equally without documentation, depending on vague statements attributed to nameless persons. Other testimony describes him as interested in, and always

willing to help, the students and as having good rapport with most of them.

The evidence showed, too, that during the year prior to the board hearing the wrestling team boasted three all-conference champions and one second place finisher. Apparently he was at least successful in motivating these athletes.

One witness testified he had two sons wrestle for Munger, and both were completely satisfied with his coaching and with his treatment of them. Another witness for Munger testified he would like nothing better than to have his own son coached by Munger.

Having reviewed the whole record, we are convinced the findings of the board are not supported by a preponderance of the evidence. The judgment is reversed, and Munger is reinstated to his former position according to the terms of his contract.

REVERSED.