# IN THE COURT OF APPEALS OF IOWA

No. 21-0067
Filed December 15, 2021


**DANNA BRAAKSMA,**
        Plaintiff-Appellant,

**vs.**

**BOARD OF DIRECTORS OF THE SIBLEY-OCHEYEDAN COMMUNITY SCHOOL DISTRICT,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Osceola County, Nancy L. Whittenburg, Judge.


        A teacher appeals the termination of her teaching contract.  **REVERSED.**


        Christy A.A. Hickman of the Iowa State Education Association, Des Moines, for appellant.

        Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.


        Heard by Greer, P.J., Badding, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GREER, Presiding Judge.**

In an apparent question of first impression, we must discern how the interplay between two statutes regulating the process to terminate a teacher functions. This tension became apparent when, in the middle of the 2019–2020 school year, the Board of Directors (Board) of the Sibley-Ocheyedan Community School District (District) voted to terminate the teaching contract of long-time teacher Danna Braaksma. Braaksma asked for judicial review, and the district court upheld the Board's decision. Now, Braaksma challenges the termination on appeal. She argues (1) the Board's termination of her contract violated the Board's own policies and the teaching contract itself; (2) the termination of her teaching contract violated Iowa law because she was not allowed to complete an intensive assistance program (IAP)[1] as provided by statute; and (3) the four reasons the Board gave for ending her contract are not supported by a preponderance of the competent evidence in the record.

Here, the tension exists between the Board's contention it could terminate Braaksma for just cause at any time—under Iowa Code section 279.27—and Braaksma's position that was not so if the reasons for the termination related to conditions imposed under an IAP to address her teaching performance—under section 284.8. Because we conclude the time for proving performance under the IAP had not yet expired and the Board's termination of Braaksma's contract was

---

[1] Throughout the proceedings, "intensive assistance plan" and "intensive assistance program" have been used interchangeably. For consistency, and because the statute refers only to an "intensive assistance program," we use that term throughout. *See* Iowa Code § 284.8 (2019).

in violation of state laws, its own policy, and the terms of Braaksma's contract, we reverse.

**I. Facts and Past Proceedings.**

Braaksma began teaching in the District as a substitute teacher during the 1980–1981 school year. She continued substitute teaching in the District until she signed a continuing contract to teach high school Spanish for the 2001–2002 year. Braaksma continued in that role, teaching Spanish I through IV, without issue until the 2018–2019 school year.

It was then when Stan De Zeeuw was hired as the principal for grades seven through twelve. As part of his job as principal, De Zeeuw evaluated teachers. Braaksma, who, as a veteran teacher, was formally evaluated on a three-year rotation, was up for evaluation in the spring of 2019. She elected to be evaluated on March 21, during which time she was working with the students on a "close read." De Zeeuw took handwritten notes, which indicated Braaksma was unprepared and still completing materials at the beginning of the class period. De Zeeuw also expressed concern that Braaksma spent ten minutes explaining close reads to the students when the students and teachers were supposed to have been working on them all year.

After that review, De Zeeuw completed his written evaluation of Braaksma in April. He concluded Braaksma failed to meet six of the eight teaching standards outlined in Iowa Code section 284.3(1):

> a. Demonstrates ability to enhance academic performance and support for and implementation of the school district's student achievement goals.
> b. Demonstrates competence in content knowledge appropriate to the teaching position.

     c. Demonstrates competence in planning and preparing for instruction.

     d. Uses strategies to deliver instruction that meets the multiple learning needs of students.

     e. Uses a variety of methods to monitor student learning.

     f. Demonstrates competence in classroom management.

     g. Engages in professional growth.

     h. Fulfills professional responsibilities established by the school district.

De Zeeuw met with the superintendent, Bill Boer, and the two administrators decided Braaksma would be placed on an IAP.

To jumpstart that program, Boer and De Zeeuw met with Braaksma on April 25. Braaksma was given a typed "plan of assistance" that included fourteen bullet points of expectations she was supposed to meet to address concerns with her failure to meet the teaching standards. The fourteen points were:

- Students will receive timely feedback on assessments and homework.
- Students will receive rubrics ([when] applicable) so they know expectations ahead of time.
- Students will have multiple grades entered within each progress period (twice a quarter).
- Grades will not be mass entered just before conclusion of said grading period.
- Graded work will be completely and adequately assessed, returned to students, and submitted on [the online grading tool] within the given grade deadlines.
- All classroom materials will be prepared before class begins each day.
- All district required close reads will be satisfactorily completed within the required timeframe and ALL required paperwork will be completed by teacher.
- Teacher will attend all scheduled meetings as planned (emergency situations are exceptions) and on time.
- Teacher lesson plans will be submitted by 8:00 am every Monday (or first day of week).
- Teacher will indicate what is being planned and assessed (if necessary each day) each unit.
- Teacher will indicate standards and objections for all chapters (or units or similar concept).

- All standards and objectives for all classes will be known and posted.
- Classroom rules will be posted and referred to as needed.
- Classroom management rules and expectations will be presented at the beginning grading period for all classes taught; they will be referred to as situations arise.

Braaksma did not believe she needed the IAP and refused to sign the document. Still, she was given a copy and told she would be held accountable for improving in the outlined areas, regardless of her lack of signature. She was expected to begin working on the plan immediately. The written plan states, "Will meet and discuss during 2019–2020 academic year. Satisfactory progress must be achieved to maintain employment . . . for 2020 and beyond." According to Braaksma, neither the principal nor the superintendent discussed the plan with her again during the 2018–2019 school year.

During this time, another administrative staff change occurred. James Craig took over as the superintendent beginning with the 2019–2020 school year. He and De Zeeuw scheduled a meeting with Braaksma to revisit the IAP; it took place in Craig's office on August 21—a couple of days before students returned to class. De Zeeuw began the meeting by reading the bulleted points from the plan out loud. Braaksma spoke up several times. De Zeeuw and Craig testified she was interrupting and denigrating the plan, while Braaksma viewed her statements as interjections because she wanted clarifications and explanations about specific points of the plan and what she was supposed to be doing. According to Braaksma, she was never told she could ask questions once De Zeeuw finished reading the plan. Eventually, Craig became agitated and asked Braaksma, "Do I need to ask for your resignation now?" When she persisted, he shouted at her to

get out and ended the meeting. Braaksma spoke with Craig in the hallway later and told him she intended to follow the plan. Craig shared this information with De Zeeuw by email.

As part of being on the IAP during the 2019–2020 school year, Braaksma was supposed to be formally evaluated three times. The first of these evaluations was supposed to take place by October 31. It never occurred. According to Braaksma, she asked De Zeeuw about meeting to discuss expectations leading up to her first scheduled observation, but the meeting never took place. Then, on Friday, October 11, Braaksma encountered De Zeeuw in the supply closet and again asked about the IAP. De Zeeuw provided no substantive response, so Braaksma went to Craig to tell him about her difficulty getting information from De Zeeuw. Craig listened and then asked her to return to his office at 3:30 p.m.

When Braaksma arrived, Craig led her to the board room, where De Zeeuw was waiting. Then Craig told her, "We've done as much as we can with you," and presented her with a separation and release agreement. The agreement was for Braaksma to resign, and she would have been paid and continued to receive insurance for rest of the school year. She was given twenty-one days to decide whether to sign it, and Braaksma testified she decided to take the document home to speak with her family and an attorney. De Zeeuw testified that Craig told Braaksma, "One way or another you won't be here Monday. You can agree to this. If not you're on paid leave until the due date of the agreement. You have 21 days." Braaksma did not recall being told she was on administrative leave.

On Monday, October 14, Braaksma reported to work as usual; she believed she was still under contract and did not want to be subject to allegations she was

in breach. Craig noticed Braaksma was in her classroom and went in to ask her why she was there. De Zeeuw entered shortly after, and Craig instructed him to call the sheriff's office to have Braaksma removed from the school. The school was then put in lockdown.[2] Braaksma refused to leave until she had something in writing that she was not supposed to be teaching, which Craig then produced for her. It stated:

> You are hereby notified that you are on paid administrative leave from your teaching and extra-curricular duties. Further information will be presented as to the status of your employment at Sibley-Ocheyedan Schools as high school Spanish teacher and International Club sponsor.
> You are not to be on school grounds unless you are returning the signed release agreement you were presented with on Friday, October 11th, 2019. A substitute will be provided for your classes.

Braaksma did not take the offer to resign from her position.

On November 13, Craig notified Braaksma that he was recommending to the Board that her teaching contract be terminated immediately. Craig provided four reasons for his recommendation:

> 1. An intensive assistance program was provided to you and you refused to comply with the program with regard to grading.
> 2. Failed to teach appropriate to grade level.
> 3. Failed to meet Teaching Standard 8.
> 4. Students in Spanish II have not received appropriate instruction.

Five days later, Craig made a written recommendation to the Board to end Braaksma's contract. Braaksma exercised her right to request a private hearing, and it took place over two days—on December 16, 2019, and January 8, 2020.

---

[2] At the hearing before the Board, De Zeeuw testified it "wasn't a lockdown" but admitted he made an announcement over the loudspeaker, stating, "Until further notice, staff, please keep the students in their rooms."

Following the conclusion of the hearing, the Board issued a written decision the same day. In its entirety, it states:

> Pursuant to Iowa Code 279.16, and based on the evidence in the record of the private hearing conducted on December 16, 2019 and January 8, 2020, the Board of Directors of the Sibley-Ocheyedan Community School District direct that Danna Braaksma's continuing teaching contract with the Sibley-Ocheyedan Community School District be terminated effective immediately.[3]

After receiving the decision, Braaksma petitioned for judicial review, asking for the decision of the Board to be reversed. She argued the Board's finding of "just cause" to terminate her teaching contract was not supported by a preponderance of the evidence; was in violation of the statutory provisions governing teacher performance review in chapter 284; and was made in violation of both District policy and her contract, which require the District to provide an IAP.

On judicial review, the district court affirmed the Board's decision to terminate Braaksma's contract. Citing Iowa Code section 279.27, which states, "A teacher may be discharged at any time during the contract year for just cause," the district court concluded the Board was allowed to terminate Braaksma's contract for deficient performance. The court considered the record made at the hearing before the Board and concluded that a preponderance of evidence in the record supported the four reasons the superintendent gave for terminating Braaksma's

---

[3] A 2017 change in Iowa Code section 279.18 suggests the Board is no longer required to make fact findings as part of its decision and ruling. *See* 2017 Iowa Acts ch. 2, § 34; *compare* Iowa Code § 279.18(2) (2016) ("In [proceedings for] judicial review, especially when considering the credibility of witnesses, the court shall give weight to the *fact findings* of the board; but shall not be bound by them." (emphasis added)), *with id.* § 279.18(2) (2019) ("In [proceedings for] judicial review, especially when considering the credibility of witnesses, the court shall give weight to the *decision* of the board, but shall not be bound by it." (emphasis added)).

contract and that those reasons constituted deficient performance of her teaching job. The court considered section 284.8, which requires that school districts "shall be prepared to offer an [IAP]" if a teacher is found not to meet the teaching standards of section 284.3 and the Board's written policy that a teacher "placed on intensive assistance . . . will have a minimum of 6 months and a maximum of 12 months to implement change." The district court recognized Braaksma was not given six months on the plan but concluded the fact was inapposite because section 279.27 allows for discharge "at any time for just cause."

Braaksma appeals.

## II. Standard of Review.

We review the school board's termination of Braaksma's contract for correction of errors at law. *See Bd. of Dirs. of Ames Cmty. Sch. Dist. v. Cullinan*, 745 N.W.2d 487, 493 (Iowa 2008). We glean some evidence of the Board's determinations of credibility from its ultimate decision, and we give those determinations weight. *See* Iowa Code § 279.18(2) ("[E]specially when considering the credibility of witnesses, the court shall give weight to the decision of the board, but shall not be bound by it."). But, as always, it is the role of the court—not the Board—to determine the meaning of statutes. *See Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 760 N.W.2d 454, 456 (Iowa 2009).

## III. Analysis.

Braaksma contends that the Board's decision to terminate her contract should be reversed because she was entitled to participate in an IAP[4] that adhered

---

[4] "Intensive assistance" is statutorily defined as "the provision of organizational support and technical assistance to teachers, other than beginning teachers, for

to the statutory and contractual requirements as well as the policies adopted by the Board. She argues that because she was not allowed to do so, the termination of her contract is not proper.

De Zeeuw concluded Braaksma was not meeting the expectation of six of the eight Iowa teaching standards, which are codified in Iowa Code section 284.3(1)(a) through (h). Based on this conclusion, De Zeeuw had to recommend that Braaksma participate in an IAP and Braaksma had to do so. *See* Iowa Code § 284.8(2) ("If . . . an evaluator determines . . . [a] teacher is not meeting district expectations under the Iowa teaching standards . . . , the evaluator *shall . . . recommend* to the district the teacher participate in an [IAP]." (emphasis added)), (3) ("A teacher who is not meeting the applicable standards . . . *shall participate* in an [IAP]." (emphasis added)). Similarly, the District had to have a program to offer Braaksma. *See id.* § 284.8(2) ("All school districts shall be prepared to offer an [IAP]."). Notably, the District would receive moneys appropriated for teacher professional development if the Board applied to the department of education under its participation requirements. *See id.* § 284.4(1)(b)(2) (including the requirement to "[m]onitor the evaluation requirements of [chapter 284] to ensure evaluations are conducted in a fair and consistent manner throughout the school district or agency").

To meet the State's directive under chapter 284, the District developed policies. The District's policy related to IAPs provides that the teacher and principal "will mutually develop an [IAP]" and the teacher "will have a minimum of 6 months

---

the remediation of identified teaching and classroom management concerns for a period not to exceed twelve months." Iowa Code § 284.2(6).

and a maximum of 12 months to implement the changes." This policy applied to Braaksma; her contract states, "The official school policies, calendar, and Master Contract are part of this contract." Still, the district court found "[t]he Board did not dispute that Braaksma was terminated without re-evaluation under [section] 284.8(4) or that Braaksma had no input or assistance from administration in her intensive plan." Yet, the statute is clear. "Following a teacher's participation in an [IAP], the teacher shall be reevaluated to determine whether the teacher successfully completed the [IAP] and is meeting . . . the applicable Iowa teaching standards . . . ." *Id.* § 284.8(4). "If the teacher did not successfully complete the [IAP] or continues not to meet the applicable Iowa teaching standards," *then* the Board has the option to "[t]erminate the teacher's contract immediately [for just cause] pursuant to section 279.27." *Id.* at § 284.8(4), (a).

Here, it is undisputed that Braaksma was not given six months to implement the changes outlined in her IAP. The plan began on April 25, 2019, and Craig placed her on administrative leave on October 11, 2019. Even if we count the summer—at which time there were no classes to be taught, so Braaksma could not actively work on implementing the plan—less than six months passed between the two dates.

The district court decided the District's failure to allow Braaksma the minimum six months of participation was not controlling because section 279.27 allows for discharge for just cause "at any time." Putting it another way, the Board argues termination of Braaksma's contract was proper because the "intensive assistance placement of Braaksma on April 25, 2019 and completion of the intensive assistance is not a condition precedent to a chapter 279.29 discharge."

But when a teacher is discharged for failure to meet the teaching standards (i.e., deficient performance), we believe it is a condition precedent. Otherwise the mandatory language within section 284.8—that if the teacher is not meeting teaching standards, the school district "*shall . . . offer*," the evaluator "*shall . . . recommend*," and the teacher "*shall* participate in an [IAP]"—becomes meaningless. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."); *see also* Iowa Code § 4.1(30)(a) ("The word 'shall' imposes a duty.").

In its decision, the district court concluded there were two types of "just cause" for which a teacher could be fired for their own actions[5] under section 279.29—those of "misconduct" and those of "deficient job performance." But the cases considered by the district court that involved an immediate firing of a teacher for "deficient job performance" were decided before 2001, when the legislature established chapter 284. *See* 2001 Iowa Acts ch. 161, § 1. Section 284.1 established a "student achievement and teacher quality program," with two of the "major elements" being "[p]rofessional development designed to directly support best teaching practices" and "[e]valuation of teachers against the Iowa teaching standards." 2001 Iowa Acts ch. 161, § 2. The teaching standards of section 284.3(1) were established at the same time. *See* 2001 Iowa Acts

---

[5] The district court contrasted these with "legitimate consideration[s] relating to the school district's personnel and budget needs."

ch. 161, § 4.  The IAP was not added until 2002.  *See* 2002 Iowa Acts ch. 1152, § 17.  And school districts were originally given until July 1, 2004, to "be prepared to offer an intensive assistance program."  *Id.*  In 2003, the legislature extended the deadline to July 1, 2005.  2003 Iowa Acts ch. 180, § 47.

At oral argument, the Board contended that it can terminate a teacher for just cause even if the teacher is on an IAP.  And, if the reasons for the termination are not related to the performance issues listed in the IAP, we agree the Board has that option.  Based on our interpretation of section 284.8, the Board would still have the power to immediately discharge a teacher for just cause under section 279.27 for reasons relating to misconduct.  But if the teacher is attempting to improve under an IAP, we believe the interplay between sections 279.27 and 284.8 impacts when a teacher can be terminated.  Thus, when the teacher is discharged for reasons related to the Iowa teaching standards, the need to offer an IAP—as section 284.8 mandates—cannot be ignored.  And while chapter 284 does not set specific timing deadlines to achieve compliance, the District cannot ignore its own policies about that program.  Here, the District's policies, which were incorporated into Braaksma's teaching contract, promised her at least six months on the program.  After that time, she was to be reevaluated.  Then, if she was still failing to meet the standards, she could be fired—under both the statute and the District's policy.  *See* Iowa Code § 284.8(4)(a).

In its appellate brief, the Board implies Braaksma was not entitled to spend six months on the IAP because she refused to engage with or participate in the plan for improvement that was provided to her.  We understand this implication to suggest Braaksma was fired for insubordination rather than failure to achieve the

goals of the IAP. But insubordination was not one of the reasons the superintendent gave for terminating Braaksma's contract. And "[o]ur review is 'limited to the specific reasons stated in the superintendent's notice of recommendation of termination.'" *Mackey v. Newell-Providence Cmty. Sch. Dist.*, 483 N.W.2d 5, 8 (Iowa Ct. App. 1992) (quoting Iowa Code § 279.16).

With these statutes defining our course, we reverse the district court's and the Board's decisions. The termination of Braaksma's contract violated section 284.8, the terms of the contract itself, and the District's policies.

## IV. Conclusion.

The District was required to offer Braaksma an IAP once it determined she was failing to meet the statutory teaching standards. But it ultimately discharged her contract because of deficient performance without offering the program in adherence with contractual, statutory, and policy provisions, so the discharge was improper under section 284.8. As a result, we reverse the ruling of the district court and the Board's decision terminating Braaksma's contract and reinstate Braaksma to her former position according to the terms of her contract. *See Munger v. Jesup Cmty. Sch. Dist.*, 325 N.W.2d 377, 381 (Iowa 1982).

**REVERSED.**