TELEGRAPH HERALD, INC., Appellant,

v.

CITY OF DUBUQUE, Iowa, and City Council, consisting of Richard Wertzberger, James Brady, Thomas Tully, D. Michael King, and Sister Carolyn Farrell, Appellees.

No. 64279.

Supreme Court of Iowa.

Oct. 15, 1980.

Rehearing Denied Nov. 6, 1980.

See also Iowa, 297 N.W.2d 523.

530

Allan J. Carew of Fuerste, Carew, Coyle, Juergens and Sudmeier, Dubuque, for appellant.

Barry A. Lindahl, City Sol., Dubuque, for appellees.

REYNOLDSON, Chief Justice.

This appeal arises out of the same circumstances we addressed in a related opinion filed today, *City of Dubuque v. Telegraph Herald, Inc.,* 297 N.W.2d 523 (Iowa 1980). The issues here involve the *Herald's* attempts to secure information about applicants for the position of Dubuque city manager through Iowa's open meetings law, chapter 28A, The Code 1979.

Plaintiff newspaper has appealed, and defendants city and council members have cross–appealed, from trial court's rulings in the *Herald's* suit alleging violations of chapter 28A. We affirm on plaintiff's appeal, affirm in part and reverse in part on defendants' cross–appeal, and remand with directions.

July 10, 1979, plaintiff *Telegraph Herald, Inc.,* publisher of a Dubuque newspaper, brought a section 28A.6 law action against the city of Dubuque and the individual council members, seeking judicial enforcement of chapter 28A, The Code 1979. The petition alleged that in interviewing and selecting candidates for the position of city manager the council held meetings and closed sessions in violation of the open meetings law. The *Herald* prayed that the court determine the city had acted illegally, order payment of costs and attorney fees, and enjoin defendants from future chapter 28A violations for one year.

October 25, 1979, the cause came on for trial. The evidence disclosed that the council members and mayor agreed informally, in open meeting, that if some applicants requested confidentiality all applications would be considered in closed session, otherwise all would be considered in open session.

As a result of advertisements approximately forty one applications were received. Five applicants requested confidentiality despite a warning in the advertisement that the applications were subject to the open meetings law. A later survey conducted by the city after this suit was commenced revealed approximately thirteen applicants objected to release of their names.

The evidence shows the council went into closed sessions at several meetings in May, June and July of 1979 to consider and screen these applicants. When the field of candidates had been narrowed to seven, city council members, usually individually but on at least four occasions in pairs, interviewed the finalists personally at various times and places. Council member Farrell testified council members were more likely to become acquainted with an applicant in that type of setting. She further testified the council members did not wish to violate the open meetings law and that corporate counsel had advised the council such "one–on one" interviews would not violate chapter 28A provisions.

During trial the *Herald* sought to introduce into evidence tape recordings of the closed sessions to determine whether the council legally closed the sessions to discuss matters that might cause irreparable damage to some persons, or merely to discuss qualifications, which would not justify such action. Defendants objected on relevancy grounds, asserting the substance of the closed session was not at issue; rather, the issue was whether they legally could go into closed session to screen applicants. Trial court eventually sustained the objection and ordered the envelope containing the tape sealed.

Trial court filed its ruling October 26, 1979. It held the interviews conducted between final candidates and individual council members did not constitute "meetings" as defined in section 28A.2(2) because less

than a majority of the council were present. It held the executive (closed) sessions occurring May 16 and 22, June 12 and 18, and July 6, 9 and 11 were all held contrary to one or more chapter 28A requirements, including reference to a specific exemption for closing the meeting, section 28A.5(2); taking final action in open session, section 28A.5(3); and obtaining an affirmative closure vote of two–thirds of the members or, alternatively, of all the members present at the meeting, section 28A.5(1).

Costs, including attorney fees and expenses totaling $3,257.13, were taxed to the city. Contrary to Dubuque's contention, the taxed fees were not prorated and confined to those incurred with respect to the issue upon which the *Herald* had been successful. Council members were enjoined "from any further violations of Chapter 28A . . . from October 26, 1979 to October 25, 1980." Trial court overruled the *Herald's* Motion for Enlargement of Findings and Amendment of Decree, designed to secure a holding that the tapes and minutes of the illegally closed council sessions were public records.

The *Herald* contends on appeal that trial court should have (1) ruled the interviews with applicants, conducted by one or two city council members at a time, were "meetings" subject to chapter 28A provisions, (2) found that the closed sessions of the city council violated chapter 28A on four grounds in addition to those found, (3) held the minutes and tapes of the illegally closed council sessions were public records, and (4) admitted these minutes and tapes into evidence. Finally, the *Herald* requests that it be awarded costs and attorney fees on this appeal.

Dubuque and the council members assert on cross–appeal that because the *Herald* was only partially successful in establishing chapter 28A violations, costs and attorney fees should not have been awarded for the entire case.

I. *Were the applicant interviews, conducted by one or two city council members, "meetings" under chapter 28A provisions?*

Trial court ruled the above-described "one on one" interviews with applicants did not constitute section 28A.2(2) "meetings" because less than the majority of the council were present at each interview. The *Herald* contends the statutory definition of "meeting" is ambiguous. It suggests various alternative constructions in an attempt to establish that the legislature could not have intended the instant interviews to fall outside the statutory definition.

Section 28A.2(2) provides:

"Meeting" means a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action upon any matter within the scope of the governmental body's policy making ° duties. Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter.

 In construing this statute we take note of the legislative intention expressed in section 28A.1 that "[a]mbiguity in the construction or application of this chapter should be resolved in favor of openness." *See Greene v. Athletic Council of Iowa State University*, 251 N.W.2d 559, 560 (Iowa 1977); *Annot.*, 38 A.L.R.3d 1070, 1073 (1971). However, a statute must be read as a whole and given its plain and obvious meaning, a sensible and logical construction. *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980) (citing cases). We seek to avoid interpretations that would produce strained, impractical or absurd results. *Id.* at 19 (citing *Loras College v. Iowa Civil Rights Commission*, 285 N.W.2d 143, 147 (Iowa 1979)).

██ It is obvious that the legislature's definition of "meeting" is confined to the first sentence of section 28A.2(2). It requires a gathering (in person or by electronic means) of a *majority* of the members of a governmental body. It also requires deliberation or action upon a matter within the scope of the body's policy making duties.

Thus, this definition is applicable whenever the term "meeting" is used in chapter 28A, including the second sentence of section 28A.2(2).[1] In our view, the second sentence of section 28A.2(2), quoted above, merely reaffirms the right of a majority of a governmental body's members to meet for a purely ministerial function, or in a social setting (as is often the case· in a small community), without being required to follow chapter 28A provisions, so long as there is no discussion of policy and no intent to avoid the purposes of the act. *See City of Miami Beach v. Berns*, 245 So.2d 38, 41 (Fla.1971).

The *Herald*, centering upon the section 28A.2(2) clause "or no intent to avoid the purposes of this chapter," argues the individual interviews were "meetings" because the council intended to evade the act. A threshold difficulty with this position is that the proof fails to establish this was the council's "intention."

■ The "sunshine laws" are creatures of recent statutes unknown to the common law. *Knight v. Iowa District Court*, 269 N.W.2d 430, 433 (Iowa 1978). Because the statute does not specify whether actions to enforce chapter 28A are ordinary or equitable, this case should have been, and was, brought and tried as an ordinary action. *See In re Oseing*, 296 N.W.2d 797, 800 (Iowa 1980). It follows that trial court's findings are binding here if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■ Trial court did not find an intent to violate the act. It concluded the council members were, *at all times*, acting reason-

ably on their corporation counsel's advice. There obviously is a difference between an intention to violate chapter 28A and a good–faith reliance on corporate counsel's opinion that the provisions of chapter 28A are not implicated in a proposed course of action. *See also* § 28A.6(3)(a)(3) (reasonable reliance on corporate counsel) and § 28A.6(4) (ignorance of legal requirements no defense to enforcement proceeding). This case does not require us to interpret further the above ·quoted section 28A.2(2) clause the *Herald* relies on, or to speculate concerning its possible applications.

■ Although other sunshine acts contain varying provisions, our above ruling is supported by opinions from other jurisdictions. *See Henderson v. Board of Education*, 78 Cal.App.3d 875, 880 -83, 144 Cal. Rptr. 568, 571 72 (1978); *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors*, 263 Cal.App.2d 41, 48 n.4, 69 Cal.Rptr. 480, 486 n.4 (1968); *Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 571 72, 548 P.2d 35, 71 ·72 (1976); *People ex rel. Cooper v. Carlson*, 28 Ill.App.3d 569, 571 72, 328 N.E.2d 675, 678 (1975); *Woodbury Daily Times Co. v. Gloucester County Sewerage Authority*, 158 N.J.Super. 448, 450, 386 A.2d 445, 446 (App.Div.1978). The composite rationale which may be distilled from these decisions is that such laws do not prohibit gatherings of less than a majority of the governing body where decisions are not made and official actions are not taken and that the right of free speech might be violated by a law forbidding any discussion by public officers between meet-

---

1. The attorney general has reached the same interpretation. *See* letter from Thomas J. Miller, Attorney General, and David Fortney, Assistant Attorney General, to State Senators Rush and Small (April 11, 1980) (a meeting is a coming together of a *majority* of members of a governmental body to discuss or act upon matters within the scope of matters committed to their jurisdiction); letter from Bruce L. Cook, Assistant Attorney General, to State Representatives Pellett and Crabb (May 16, 1979) ("[T]here clearly must be a 'majority of the members of a governmental body' involved in any particular assemblage or gathering to con-

stitute a meeting .... In the absence of a majority of the members, the provisions do not apply and discussions or business conducted by individual members need not be open to the public."). *See also* Iowa Freedom of Information Council, *Iowa Open Meetings Law Handbook* 16 ("An important exception [to the definition of "meetings"] is a gathering of less than a majority of members. If the notice, openness and record·keeping requirements of the new Act were applied to such a gathering, it probably would limit the free speech and associational rights of public officials.").

ings.[2] Activities of a governmental body's individual members to secure information to be reported and acted upon at an open meeting ordinarily do not violate sunshine statutes. Any other rule would hamstring the progress of governmental bodies, and impose intolerable time burdens on unpaid officeholders.

The *Herald's* next two contentions likewise are unpersuasive. The "one on one" interviews were neither "closed sessions" nor "informal gatherings," measured against our above analysis. Under the first contention, each time a member of a governmental body discussed policy with another individual, a "closed session" would occur. An equally illogical result obtains under the *Herald's* "informal gathering" theory, for it ignores the legislature's apparent intent that temporal proximity exist among members of the governmental body.

Finally, the *Herald* argues the four interviews conducted by two council members did constitute a "meeting" because the two members constituted a "governmental body" within the section 28A.2(1)(c) definition. But the multimember body referred to in that subsection must be "formally and directly created" by another body qualifying under subsections (a) or (b) before it is a statutory "governmental body" as that phrase is used in the section 28A.2(2) definition of "meeting."[3]

We hold trial court was right in determining these interviews did not violate chapter 28A. If the information gleaned from the interviews (other than personal matters protected by section 28A.5(1)(i)) had been discussed in an open council meeting before final action, the legislative policy that "the basis and rationale of governmental decisions [be] easily accessible to the people" would have been achieved. *See* § 28A.1, The Code. This result would have

been insured had the city disclosed with respect to each applicant the information requested by the *Herald*, discussed in the companion "public records" case filed today.

II. *Did the closed sessions of the city council violate chapter 28A on grounds in addition to those the court found?*

■ Although trial court found that seven executive sessions of the city council were illegally closed, the *Herald* argues the court erred in failing to hold the closures illegal for four additional reasons. Dubuque and the council members allege no issue is presented for review because the *Herald* was not prejudiced: trial court agreed the meetings were illegally closed.

The *Herald's* petition, formulated under our liberal pleading rules, only generally alleged the closed sessions were "in violation of the provisions of Chapter 28A." *See* Iowa R.Civ.P. 69. The newspaper did not employ a motion to enlarge trial court's findings and conclusions to urge that court to include in its ruling the additional grounds it now asserts. *See* Iowa R.Civ.P. 179.

We agree the city council illegally closed the sessions for the reasons identified by trial court. We decline to consider additional reasons that, in our view, were not directly presented to trial court nor ruled on there. *See generally White v. Citizens National Bank*, 262 N.W.2d 812, 814-15 (Iowa 1978); *Shaw v. Addison*, 236 Iowa 720, 733 34, 18 N.W.2d 796, 803 04 (1945).

III. *Do tape recordings of the illegally closed sessions constitute public records open to public inspection?*

■ Trial court overruled the *Herald's* Motion for Enlargement of Findings and Amendment of Decree, designed to obtain a holding that the tape recordings of the

---

2. *See City of Miami v. Berns*, 245 So.2d at 41 ("It would be contrary to reason and violate the right of free speech to construe the law to prohibit any discussion whatever by public officials between meetings. The practice of discussing politics and government is part of our American heritage enjoyed by public officials and private citizens.").

3. *See* letter from Mark Schantz, Solicitor General, and Fred Haskins, Assistant Attorney General, to Hanson (May 4, 1979) (also expressing the view that the multimember body thus created must be delegated governmental authority—either policy-making or decision-making duties).

closed sessions became public records open to public inspection. The court relied on the absence of such a penalty in section 28A.6(3), which lists sanctions for violating chapter 28A provisions.[4] Trial court found no written minutes of the closed sessions were kept, thus it addressed only the proper treatment of the tape recordings.

We first note section 28A.5(4) removes such tape recordings from the classification of "public records open to public inspection." After an *in camera* inspection trial court may determine "what part, if any, of the minutes [or recording] should be disclosed *to the party seeking enforcement* of this chapter *for use in that enforcement proceeding.*" (Emphasis supplied.) These limitations upon usage militate strongly against a release of the tapes to the general public.

The *Herald* argues that in absence of the sanction of making the tapes a public record, a governmental body could maintain secrecy by illegally closing a session intentionally. It cites *Allan–Deane Corp. v. Township of Bedminster*, 153 N.J.Super. 114, 120, 379 A.2d 265, 268 (App.Div.1977), as authority for such a non–statutory remedy. However, the New Jersey court only authorized the *plaintiff's* access to the minutes, a remedy similar to that authorized by our statute.

If the sealed records are of probative value in these cases, they ordinarily will surface and become public in an enforcement trial. On the other hand, adoption of the remedy advanced by the *Herald* could expose to public view on a mere uninten-

tional omission of a formal step in closing a meeting, vital information relating to litigation strategy, prospective land acquisitions, and specific law enforcement techniques.

We think the legislature balanced these policy considerations and found them to weigh against public exposure. We decline to read into the statute language the legislature could have supplied had it so intended. *See Hamilton*, 291 N.W.2d at 18–19; *Neumeister v. City Development Board*, 291 N.W.2d 11, 14 (Iowa 1980). Of course trial court upon appropriate findings has the power under section 28A.6(3)(c) to void any action taken at an illegally closed meeting, thus forcing the governmental body into compliance with chapter 28A requirements.

Trial court rightly denied the *Herald's* request to impose the sanction of declaring these tapes public records open to public inspection.

IV. *Should tape recordings of the closed sessions have been admitted into evidence?*

The *Herald* also appeals from trial court's rulings that the tapes should not be admitted into evidence. The court reasoned that (1) the prejudicial effect of disclosure of the tapes outweighed their probative evidentiary value, and (2) the tapes could not have evidentiary value since plaintiff did not attack the result of the closed sessions, but only the fact of closure.

Plaintiff did not, and does not, seek imposition of the section 28A.6(3)(c) sanction of voiding the council's appointment of a new

---

4. Section 28A.5(4) states:

A governmental body shall keep detailed minutes of all discussion, persons present, and action occurring at a closed session, and shall also tape record all of the closed session. The detailed minutes and tape recording of a closed session shall be sealed and shall not be public records open to public inspection. However, upon order of the court in an action to enforce this chapter, the detailed minutes and tape recording shall be unsealed and examined by the court in camera. The court shall then determine what part, if any, of the minutes should be disclosed to the party seeking enforcement of this chapter for use in that enforcement pro-

ceeding. In determining whether any portion of the minutes or recording shall be disclosed to such a party for this purpose, the court shall weigh the prejudicial effects to the public interest of the disclosure of any portion of the minutes or recording in question, against its probative value as evidence in an enforcement proceeding. After such a determination, the court may permit inspection and use of all or portions of the detailed minutes and tape recording by the party seeking enforcement of this chapter. A governmental body shall keep the detailed minutes and tape recording of any closed session for a period of at least one year from the date of that meeting.

city manager. It is apparent that the council's right to close the sessions was the fighting issue. Ordinarily, this would turn on factors apparent when the decision to close the meetings was made, not on anything subsequently said in the meeting.

In any event, on this issue the *Herald* was granted all the relief demanded in its petition: a determination that the sessions were illegally closed. Exclusion of the tapes did not affect that result. Nor will we speculate whether they should have been admitted to support one of the additional grounds of illegality we declined to consider in division II. Error, if any, in ruling these tapes inadmissible was harmless.

V. *Should the costs and attorney fees trial court awarded be confined to those incurred in litigating successful issues?*

In district court counsel for the *Herald* made a fee application under section 28A.6(3)(b) for their total time of fifty one hours, and $197.13 in advanced costs. Trial court denied defendants' request to allocate the time and expense to the issue upon which the *Herald* was successful. It found $60 per hour was reasonable, added the costs advanced, and awarded a total sum of $3,257.13. This amount was taxed as part of the costs against defendant Dubuque only, as trial court found the individual council members were, "at all time[s], reasonably acting on the advice of their corporation counsel."

On cross–appeal Dubuque argues the *Herald* advanced two principal contentions below (that the executive (closed) sessions and the individual interviews each violated chapter 28A) and was successful only with respect to one. Therefore, they assert the fees and costs should have been prorated.

Section 28A.6(3)(b) states that a court shall order payment of "all costs and reasonable attorneys fees to any party *successfully* establishing a violation of this chapter." (Emphasis supplied.) Dubuque argues that if the two issues had been submitted in separate suits, the *Herald* would only be entitled to costs and attorney fees in the litigation relating to the sessions

found to be illegally closed. It asserts a different result should not obtain merely because the two issues were joined. Dubuque reasons that by being forced to pay costs and attorney fees attributable to the *Herald's* second, unsuccessful contention, the city is being penalized for *legal* conduct.

The *Herald* interprets section 28A.6(3)(b) to mean that upon proof of *any* violation, *all* costs and reasonable attorney fees are to be awarded to the party who established the violation. Of course this interpretation would encourage parties to combine frivolous with valid contentions in order to establish a chapter 28A violation, knowing attorney fees would be awarded for the total time expended.

 Although we have held trial court has considerable discretion in fixing attorney fees, *see Gabel v. Gabel*, 254 Iowa 248, 250, 117 N.W.2d 501, 503 (1962), the crucial issue here is not discretion, but statutory interpretation. In view of the statutory language and policy considerations involved, we hold the award for costs and attorney fees should be confined to those costs and fees incurred in successfully establishing a chapter 28A violation. Where, as here, a party is unsuccessful in establishing other alleged violations, the costs and attorney fees must be prorated. Upon remand trial court should determine that portion of the costs and attorney fees attributable to the individual interviews issue, and amend its judgment to eliminate those items from the award against Dubuque and in favor of the *Herald*.

Finally, the *Herald* requests this court to fix attorney fees for its counsel's services in defending the cross appeal. We do not find express statutory authority in chapter 28A to assess attorney fees for appellate services.

 The general rule is that in order to tax attorney fees the situation must fall clearly within the terms of the statute. *Wilson v. Fleming*, 239 Iowa 918, 919, 32 N.W.2d 798, 798 (1948). Thus while section 472.33, The Code, permits taxing of attorney fees for a successful appeal to the dis-

trict court in a condemnation case, we have held fees cannot be taxed for appeals to this court. *Iowa Department of Transportation v. Read*, 262 N.W.2d 533, 537 (Iowa 1978); *Wilson*, 239 Iowa at 920, 32 N.W.2d at 798. In marital dissolution cases the appellate court may award fees, for the appeal, apparently under the general language of section 598.11, which allows a court to order the adverse party to pay a sum "to enable such party to prosecute or defend the action." *See generally In re Marriage of Jennerjohn*, 203 N.W.2d 237, 245 (Iowa 1972). Iowa Rule of Criminal Procedure 26 permits an award of fees to counsel for an indigent for services "at every stage of the proceedings ... through appeal."

■ No such language appears in chapter 28A. Under section 28A.6(3), the court that orders payment of costs and reasonable attorney fees is the same court that makes the prior "finding by a preponderance of the evidence that a governmental body has violated any provision of this chapter." We think both references are to the district court, and there is no statutory authority for this court to assess attorney fees for appellate services.

We affirm on plaintiff's appeal, affirm in part and reverse in part on defendants' cross–appeal, and remand with directions. Costs on this appeal are taxed to plaintiff.

AFFIRMED ON PLAINTIFF'S APPEAL, AFFIRMED IN PART AND REVERSED IN PART ON DEFENDANTS' CROSS–APPEAL, AND REMANDED WITH DIRECTIONS.

All Justices concur except UHLENHOPP and McCORMICK, JJ., who dissent and SCHULTZ, J., who takes no part.

UHLENHOPP, Justice (dissenting in part).

I concur in all of the court's opinion except division III, with which I disagree.

Section 28A.5(4) requires a tape record of a closed session. The tape recording is not to be divulged to the public. But if an enforcement proceeding is brought under chapter 28A, the tape is examined by the court in camera and the court balances prejudice to the public interest against probative value in the enforcement proceeding to determine whether to reveal part or all of the tape to the party seeking enforcement. I believe these provisions apply before the court tries the enforcement proceeding and decides whether the session was legally or illegally closed.

What happens after the court decides whether the session was legally or illegally closed? If the court holds the session was legally closed, the tape remains confidential and is not divulged to the public. But if the court finds the other way and holds the session had to be open, I think the inevitable effect of the judgment is that the occurrences at the session are not confidential—they constitute public information. Consequently the officials who attended the session could be required to tell what transpired there, and the tape of the session would stand on the same footing and be available to the public. We would have a strange situation if the officials could be compelled to tell what happened but the tape on the identical occurrences could not be heard.

The sanctions in section 28A.6 constitute punishment; they do not deal with the inevitable effect of the judgment itself in rendering the information public. The question the public has is not what punishment is meted out for illegally closing a session, but what happened at the session. Public officials should not be able to render public information permanently secret from the public by the simple expedient of going into closed session.

The trial court and this court have now held that these council sessions had to be open. What transpired at the sessions is therefore public information. The councilmen can be required to divulge that information or it is available from the tape recordings. If courts hold in enforcement proceedings that sessions in question had to be open but then hold that the officials who attended the sessions do not have to divulge what occurred and tapes of the sessions cannot be heard, the courts will perpetuate

**538**

the secrecy they themselves have held illegal.

A situation could arise in which a court holds that a session was closed legally as to one topic but illegally as to another topic. That does not appear to be the situation here. 

I think the trial court should have sustained this part of the *Herald's* motion to enlarge findings and amend decree.

McCORMICK, J., joins in this dissent.