WATERMAN, Justice
(dissenting).
I respectfully dissent. I would affirm the well-reasoned district court decision that correctly applied the plain language of Iowa Code section 21.2(2)- (2013) and our precedent. The majority opinion today replaces a clear, easy-to-follow rule with a vague standard that will invite costly litigation and deter diligent public officials from conferring with administrators to prepare for public meetings. The majority adopts a new agency theory at odds with Iowa municipal law and never adopted by any other .appellate court. This agency theory treats an unelected administrator as an elected county supervisor in order to find the “majority” required to trigger the open meetings law. This untested and novel agency theory was not raised by plaintiffs in district court or on appeal. We should not change the rules after the game is played and then allow a retrial on a theory that was not preserved.
The majority also gratuitously suggests that- actions taken at improper closed meetings can simply be ratified at an open meeting. Those dicta may undermine an important statutory remedy that deters violations of the open meetings law — a judicial declaration that the action taken behind closed' doors is void. Ironically, the majority’s goal of furthering transparency in local government actions could have the opposite effect.
I agree with the majority that substantial evidence supports the district court’s finding that the individual Warren County supervisors “deliberated” about the challenged reorganization through serial private one-on-one meetings with Administrator Furler acting as a “conduit” who relayed messages between supervisors. Based on the documents executed before the public meeting, the details of the reorganization were approved and finalized privately subject to ratification at the public meeting. But the district court correctly concluded the supervisors did not violate the open meetings law because a majority of the supervisors never gathered in person as required by the statutory definition, which provides:
“Meeting ” means a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action upon any matter within the scope of the governmental body’s policy-making duties. Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter.
Iowa Code § 21.2(2) (second emphasis added). It is undisputed that the supervi *239 sors took no binding vote on the reorganization until the public meeting.
: The majority acknowledges “oür legislature twice considered, but failed to pass, proposed bills that , would have amended section 21,2(2) to address serial submajority gatherings.” Yet, the majority effectively rewrites the statutory definition of “meeting” to prohibit informal practices that the legislature has allowed to continue since our unanimous decision thirty-five years ago'in Telegraph Herald, Inc. v. City of Dubuque, 297 N.W.2d 529, 533-34 (Iowa 1980) (interpreting the statute to allow private in-person gatherings of less than a majority).
I would defer to the elected branches to redefine the requirements of the open meetings law. That is their policy decision to make. The Iowa legislature has clearly acquiesced in our interpretation of chapter 21 in Telegraph Herald. See Ackelson v. Manley Toy Direct, L.L.C., 832 N.W.2d 678, 688 (Iowa 2013) (“[W]e presume the legislature is aware of our cases that interpret its statutes. When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our • interpretation.” (Citation omitted.)).
Unfortunately, no amici curiae briefs were filed on behalf of the Iowa State Association of Counties, the Iowa League of Cities, the Iowa Association of School Boards, or the executive branch of state government to address the practical problems that may result from the majority’s new interpretation. Today’s decision can be and should be limited to its facts — a fait accompli arranged behind closed doors. My concern, however, is that the decision will have a chilling effect on well-intentioned public officials who consider themselves. duty-bound to get up to speed on pending matters before public meetings. Let us consider the dilemma now faced by public officials who want to do their homework by sitting down with, an administrator privately, rather than prolonging a public meeting. May they continue to confer privately with staff or in small groups? Or, if they do, could someone sue them for violating chapter 21, putting their personal assets at risk for a judgment for attorney fees? Chapter 21 provides that statutory penalties and attorney fees may be imposed on elected officials personally unless they establish a defense of reasonable good faith or reliance on a court opinion or advice of counsel. See Iowa Code § 21.6(3) (providing remedies for violations of chapter 21); City of Postville v. Upper Explorerland Reg’l Planning Comm’n, 834 N.W.2d 1, 7 (Iowa 2013) (“Generally, Iowa law makes members of governmental bodies subject to liability for [chapter 21] violations.”); cf. City of Biverdale v. Diercks, 806 N.W.2d 643, 654-59 (Iowa 2011) (discussing the good-faith defense to fee awards under the Open Records Act, Iowa Code chapter 22). Elected officials always face the consequences of unpopular or controversial decisions at the ballot box. But potential personal liability for thousands of dollars in attorney fees is a different matter.
In my view, we correctly interpreted section 21.2(2) over three decades ago in Telegraph Herald. .In that case, the local newspaper and its publisher sued the City of Dubuque and individual members of the city council, alleging that private interviews of applicants for the city manager position violated the open meetings law. 297 N.W.2d at 531. City council members alone or in pairs personally interviewed the seven finalists behind closed doors. Id. The district court ruled that these interviews did not violate the open meetings law “because less-than the majority, of the council were present at each interview.” Id. at 532. We affirmed, holding that “the *240 legislature’s definition of ‘meeting’ .:. requires a gathering (in person or by electronic means) of a majority of the members of a governmental body.” Id. We noted “[t]he attorney general ha[d] reached the same interpretation.” Id. at 533 n. 1. We expressly rejected the argument that the statute was violated by the interviews conducted by less than a majority of the council. Id. at 534. We noted the legislature required “that temporal proximity exist among members of the governmental body” to constitute a “meeting.” Id. Today’s decision overrules that holding. I would honor stare decisis.
The majority purports to distinguish Telegraph Herald by stating, “[T]he council members [in that case] obviously did not deliberate regarding whom they would actually hire during the interviews.” We did not say that in Telegraph Herald. Rather, we noted the “[t]rial court did not find an intent to violate the act” and “concluded the council members were, at all times, acting reasonably on their corporation counsel’s advice.” Id. at 533. We also noted that the legislature’s definition of meeting required both a gathering of a majority and deliberation. Id. at 532. We squarely held the statute is not violated when fewer than a majority meet. Id. at 533. The district court correctly understood and applied the statute and Telegraph Herald when it stated:
The definition of meeting in' section 21.2(2) plainly states that a gathering of the majority of the members of the governmental body must occur. Telegraph Herald interpreted the legislature’s definition as requiring temporal proximity. Here, there is no proof of temporal proximity among the Supervisors when they met with Administrator Furler to discuss restructuring the County government. In fact, it appears as though deliberate efforts were made to insure that there was no temporal proximity among the discussions between Administrator Furler and the individual Supervisors ..Therefore, there was no “gathering (in person or by electronic means) of a majority of the members.” The Court is bound by the words chosen by the legislature, not by what it thinks the legislature should have said.
We applied Telegraph Herald in Weder-gren v. Board of Directors, 307 N.W.2d 12, 18 (Iowa 1981). In that case, we addressed a superintendent’s challenge to his termination by a school board. Id. at 15. He contended three members of the five-member school board violated the open meetings law when they discussed his termination in phone, calls with each other. Id. at 18. We reiterated that “[t]he legislature has decided to extend coverage of the law only to a gathering of- a majority of the members of a governmental body.” Id. We concluded that phone calls between two members were not a meeting subject to the requirements of chapter 21 and that “[t]he only possible violation of the open meetings law occurred” when three members (a. majority) participated in a conference call to discuss the role of outside counsel in the termination. Id. at 18-19. We thereby squarely rejected the theory that serial meetings or discussions between fewer than a majority of the board can violate the open meetings law. The majority reaches a different result today without even acknowledging Wedergren. Again, I would honor stare decisis.
We noted in Telegraph Herald that ambiguities in the open meetings law are to be'construed in favor of openness but concluded the plain meaning of the statutory definition of “meeting” meant a gathering of a majority of the council, not smaller groups. 297 N.W.2d at 532-33. That interpretation is supported by dictionary definitions:
*241 meeting, n. (14c) Parliamentary law. A single official gathering of people to discuss or act on matters in which they have a common interest; esp., the convening of a deliberative assembly to transact business. • A deliberative assembly’s meeting begins with-a call to order and continues (aside from recesses) until the assembly adjourns.
Black’s Law Dictionary 1131- (10th ed.2014). Webster’s Third New International Dictionary defines “meeting” as “a gathering for businéss, social, or other purposes.” Webster’s Third New International Dictionary 1404 (unabr. ed.2002). “Gathering” is defined as “a coming together of people in a group (as for social, religious, or political purposes).” Id. at 940. Dictionary definitions contradict the majority’s interpretation that a meeting of a majority of supervisors could occur with only one supervisor present. Importantly, the majority upholds the district court’s factual finding that no two supervisors gathered in the same place at the same time to deliberate about the reorganization in private. That factual finding should be dispositive and forestalls the legal conclusion that defendants violated the open meetings law.
The majority erroneously invokes the absurd results doctrine to assert the statutory definition of “meeting” is- ambiguous. We recently and unanimously reiterated that the absurd results doctrine should be used sparingly lest we contradict legislative intent expressed -in plain language:
Establishing absurdity in an1 unambiguous statute is difficult for good reason. We have explained that “we will not ignore clear legislative language merely because it leads to a result that seems contrary to the court’s expectations.” The express -language must produce a result that is’ '“demonstrably at odds with the intention” of the legislature.
In re J.C., 857 N.W.2d 495, 503 (Iowa 2014)- (citations omitted) (quoting Sherwin-Williams Co. v. Iowa Dep’t of Revenue, 789 N.W.2d 417, 427, 429 (Iowa 2010)). And I find nothing absurd about limiting the open meeting requirements to a gathering in person (or electronically) of a majority of the elected officials, which provides a workable'bright-line rule-that allows elected officials to prepare for open méetings in smaller private groups.
Other jurisdictions resoundingly reject the majority’s interpretation.- As the majority notes, in our 1980 decision in Telegraph Herald, we surveyed cases construing' similar “sunshine laws” to conclude such laws do not apply to gatherings ’ of less than a majority. 297 N.W.2d at 533-34 (“Any other rule would hamstring the progress of governmental bodies[ ] and impose intolerable time burdens on unpaid officeholders.”). Courts continue to reach the same conclusion. See, e.g., Slagle v. Ross, 125 So.3d 117, 124 (Ala.2012) (holding “a ‘meeting1 occurs when a majority of the members of a governmental body come together at the same time ” (emphasis added)); Del. Solid Waste Auth. v. News-Journal Co., 480 A.2d 628, 635 (Del.1984) (holding the Open Records Act does not apply to standing committees because such a meeting could not be a quorum under the statute); Dillman v. Trs. of Ind. Univ., 848 N.E.2d 348, 351 (Ind.Ct.App.2006) (holding that the plain meaning of “meeting” requires a majority of people present at the same time); Willems v. State, 374 Mont. 343, 325 P.3d 1204, 1209 (2014) (“[T]he definition of •‘meeting’ does not include ‘serial one-on-one discussions.’”); City ofElkhomv. City of Omaha, 272 Neb. 867, 725 N.W.2d 792, 806 (2007) .(declining to apply open- meetings law to nonquorum government subgroups); Dewey v. Redevelopment Agency of Reno, 119 -Nev. 87, 64 P.3d 1070, 1077-78 (2003) *242 (holding that “back-to-back briefings” by members of a government agency did not “create[ ] a constructive quorum or serial communication in violation of’ Nevada’s open meeting law); Citizens Alliance for Prop. Bights Legal Fund v. San Juan County, 184 Wash.2d 428, 359 P.3d 753, 762 (2015) (en banc) (“We see no reason to depart from our long-standing rule requiring the presence of a simple majority of a governing body’s members — a rule that provides clear guidance to public agencies regarding the application of the [open meetings act].”).
These appellate courts confront the practical problems our majority opinion glosses over — that its interpretation will chill necessary and appropriate private consultations by public officials that precede open meetings. The Delaware Supreme Court noted the open meetings law shows
a legislative recognition of a demarcation between the public’s right of access and the practical necessity that government must function on an orderly, but nonetheless legitimate, basis. The legislature has thus recognized that literal enforcement of the sunshine law at the standing committee level could so disrupt the orderly function of the Authority as to defeat the basic purposes for which it was created. The gathering of information and the free exchange of ideas should not be hampered at the outset, and thus dampen a careful examination of potentially controversial matters, before the Authority can even function. Certainly this does not rise to the level of “closed door” government. The public’s right of access at later stages in the decisionmaking process, and its accompanying right to question, is a strong safeguard that public servants remain accountable to. the citizens. Any interpretation of the Act beyond its obvious purpose and intent could bring the wheels of government to a halt.
Del. Solid Waste Auth., 480 A.2d at 635 (citation omitted). More recently, the Nebraska Supreme Court aptly observed the open meetings law
does not require policymakers to remain ignorant of the issues they must decide until the moment the public is invited to comment on a proposed policy. The public would be ill served by restricting policymakers from reflecting and preparing to consider proposals, or from privately suggesting alternatives. By excluding nonquorum subgroups from the definition of a public body, the Legislature has balanced the public’s need to be heard on matters of public policy with a practical accommodation for a public body’s need for information to conduct business.
City of Elkhorn, 725 N.W.2d at 806 (citation omitted). The majority simply ignores these well-reasoned decisions.
We have never held that an administrator acting as an agent for a board member can be counted to reach a majority that triggers the requirements of chapter 21. Iowa law distinguishes between elected supervisors and administrators employed by the county. I would not count an unelected administrator as a stand-in for an elected supervisor regardless of whether he or she is engaged in shuttle diplomacy between supervisors. The majority’s new agency theory rests on a legal fiction that treats the county administrator as a supervisor. The agency theory conflicts with our precedent limiting the ability of supervisors to use agents. As the majority recognizes, it is a general principle that public board members “may authorize performance of ministerial or administrative functions” but cannot delegate “matters of judgment and discretion.” Bunger v. Iowa High Sch. Athletic Ass’n, 197 N.W.2d 555, *243 559-60 (Iowa 1972). The principle that an elected county supervisor cannot delegate matters of judgment precludes the legal conclusion that Administrator Furler, who is not a supervisor, could act as one. Obviously, an administrator could, not stand in for a supervisor to vote at a public meeting. So how could she act as a supervisor privately to trigger chapter 21?[5]
The majority cites two open meetings cases in support of its agency theory: Claxton Enterprise v. Evans County Board of Commissioners, 249 Ga.App. 870, 549 S.E.2d 830, 834-35 (2001), and State ex rel Newspapers, Inc, v. Showers, 135 Wis.2d 77, 398 N.W.2d 154, 164-65 (1987). Neither case supports the majority. The reference to proxies in Showers is dicta because the plaintiffs “conceded the four Commissioners did not have the proxies of any other member of the Commission.” 398 N.W.2d at 157. The holding of Clax-ton Enterprise contradicts the majority’s interpretation. See 549 S.E.2d at 835 (“Because this meeting occurred between the county administrator and the commissioners individually, over a period of time, and at no particular place, the trial court properly found that the Board did not violate the Act_”).- ,
The majority’s agency theory has not been adopted by any other appellate court interpreting equivalent sunshine laws. Perhaps for that reason, the plaintiffs in this case did not argue an agency theory in district court or on appeal. Nor did their pleadings allege Administrator Furler acted as an agent or proxy for any supervisor.[6] Rather, the agency theory appears for the first time in this case in the amicus curiae brief filed by the Iowa Newspaper Association and Freedom of Information Council.
Not only is the agency theory a misreading of chapter 21, I would hold that the theory was not preserved. We have repeatedly held' that amici cannot preserve *244 issues for a party or raise new issues on appeal. Press-Citizen Co. v. Univ. of Iowa, 817 N.W.2d 480, 493-94 (Iowa 2012) (“Although this argument is developed at some length in the brief of the amici, it was not raised below or by the Press-Citizen. We therefore decline to reach .it.”); see also Rants v. Vilsack, 684 N.W.2d 193, 198-99 (Iowa 2004) (declining to reach an argument' raised by amici curiae that was not presented to the district court); Mueller v. St. Ansgar State Bank, 465 N,W.2d 659, 660 (Iowa 1991) (noting that “[u]nder Iowa law, the only issues reviewable are those presented by the parties”). The majority fails to explain why the' same rules do not apply here.
Plaintiffs are not entitled to a retrial because they never raised or otherwise preserved an agency or proxy theory in district court. The existence of an agency relationship and the extent of the agent’s authority are questions of fact. St. Malachy Roman Catholic Congregation of Geneseo v. Ingram, 841 N.W.2d 338, 347 (Iowa 2013) (“Whether the agency exists and its extent are questions of fact.” (quoting Fowler v. Berry Seed Co., 248 Iowa 1158, 1165, 84 N.W.2d 412, 416 (1957))); see also Peak v. Adams, 799 N.W.2d 535, 546 (Iowa 2011) (stating that “[ajgency is generally a question of fact” and reversing a summary judgment on an agency issue). The district court made no finding that Administrator Purler acted as-an agent for any supervisor. Rather, the district court found each supervisor retained his authority to approve or veto the reorganization while Administrator Purler 'merely acted as a “conduit” between them. A conduit who relays information differs from an agent with authority to negotiate policy decisions for* her principal, as Justice Mansfield explains today in his separate dissent, which I join. The district court never found that Administrator Purler was authorized to act in the place of one supervisor when she met with another. Nor can the court’s actual findings be interpreted to include an implicit finding of agency. Appellate courts may only use implicit findings to affirm a judgment. See Diercks, 806 N.W.2d at 654-55 (“We assume the district court implicitly found the facts necessary to support the fee award, including that the City did not litigate in good faith.”); Gray v. Osborn, 739 N.W.2d 855, 861 (Iowa 2007) (holding ambiguous findings “will be construed to uphold, not defeat, the judgment” (quoting Johnson v. Raster, 637 N.W.2d 174, 177 (Iowa 2001))); City of Des Moines v. Huff, 232 N.W.2d 574, 576 (Iowa 1975) (“In review of any case tried to the court at law, findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment.”). We have never used implicit findings to reverse a judgment.
The majority makes too much of the district court’s conclusion that the supervisors, “deliberated” by using Administrator Furler as a conduit. Individual supervisors deliberated separately with Administrator' Furler communicating between them.[7] The district court never found that Administrator Furler deliberated in the place of a supervisor; rather, Administrator Furlei relayed information between them. Administrator FurleFs deliberations are not those of a supervisor. Missing is the requisite real time temporal *245 proximity for the supervisors’ private dé: liberations, as well as the requirement that two supervisors meet in persQn. The district court expressly found the meetings between Administrator Furler and individual supervisors did not trigger chapter 21.
We do not apply de novo review to fact-finding in an action to enforce chapter 21. Rather, as the majority acknowledges, we review actions’ to enforce the open meetings law as ordinary, riot equitable, actions. Schumacher v. Lisbon Sch. Bd,, 582 N.W.2d 183, 185 (Iowa 1998). Accordingly, “the trial court’s findings are binding here if supported by substantial evidence.” Tel. Herald, 297 N.W.2d at 538. Most importantly, as an appellate court, we are “not free to substitute [our] own findings of fact for those of the district court.” Walsh v. Nelson, 622 N.W.2d 499, 502, 504 (Iowa 2001) (vacating fact-finding by court of appeals). Today’s departure from our precedent is all the more egregious because the majority reverses the district court to grant a new trial under a fact-bound theory the plaintiffs never raised. Giving the plaintiffs a' second bite :-at the apple under these circumstances is unfair to the district court judge and to the defendants. Our practice until now has been that new liability rules are applied prospectively and in pending appeals in which the issue had been preserved.. See, e.g., Goetzman v. Wichern, 327 N.W.2d 742, 746, 754 (Iowa 1982) (applying a new rule when plaintiff had. preserved error and to future trials and to “all pending cases, including appeals, in which the issue has been preserved”), superseded on other grounds by Iowa Code ch. 668, as recognized in Berry v. Liberty Holdings, Inc., 803 N.W.2d 106, 111 (Iowa 2011); cf. Sechler v. State, 340 N.W.2d 759, 761-62 (Iowa 1983) (declining to apply Goetzman rule in pending appeal because plaintiff had failed to preserve error on that issue). I would affirm the district court judgment without a retrial.
Finally, while remanding this case, the majority misses the opportunity to provide meaningful guidance on how to apply the balancing test set forth in Iowa Code section 21.6(3)(c). That provision expressly requires the court to “void any action taken in violation of this .chapter” unless the court affirmatively finds “the public interest in the enforcement” of the open meetings law “outweighs the public interest in sustaining the validity of the action taken in the closed session.” Id. If defendants indeed violated the open meetings law, why not declare the illegally consummated reorganization void and reinstate the terminated employees? The majority, however, citing a single inapposite decision from Vermont,[8] gratuitously suggests that viola *246 tions of chapter 21 can be cured simply by ratifying the challenged actions at an open meeting. If so, the majority has substantially weakened the enforcement mechanisms for the open meetings law.
For these reasons, I respectfully dissent.
MANSFIELD and ZAGER, JJ., join this dissent.
MANSFIELD, Justice
(dissenting).
I join Justice Waterman’s dissenting opinion. I write separately to discuss the majority’s blurring of concepts regarding the law of agency.
To say that an individual may be an agent merely begins the analysis. We need to consider the scope of that person’s agency. See In re Estate of Waterman, 847 N.W.2d 560, 574-75 (Iowa 2014). In particular, what was the agent’s authority?
The record supports the conclusion that Administrator Furler was one kind of agent. That is, she had authority to carry messages from one supervisor to another. This fact, however, does not establish that a quorum of the supervisors ever held an illegal meeting. As the statute provides, see Iowa Code § 21.2(2), and as we stated in Telegraph Herald, Inc. v. City of Dubuque, 297 N.W.2d 529, 532 (Iowa 1980), a meeting “requires a gathering (in person or by electronic means) of a majority of the members of a governmental body.” Serial communications, whether the courier happens to be the mail, a carrier pigeon, Pony Express, or Administrator Furler, do not violate the open meetings law.
A different question would be presented if Administrator Furler were another kind of agent — that is, if she were empowered with decision-making authority. For example, if one of the supervisors delegated to her the authority to work out a restructuring plan with another supervisor, this would be more problematic. In that case, Administrator Furler would be a proxy rather than a conduit.
This distinction is just a matter of common sense. For example, there is a big difference between a baseball team owner telling the general manager to offer a specific salary to a specific free agent and the owner giving the general manager permission to sign free agents for the betterment of the team.
Despite this important distinction, the majority confuses the matter by treating all agencies as if they were identical and using the terms agent, conduit, and proxy interchangeably. As discussed above, a conduit and a proxy are both agents, but they differ as to the scope of their authority. Here the district court found that Administrator Furler was a “conduit” or “messenger.” The court did not find that she was a “proxy,” nor was such a theory tried. Hence, the court correctly found no violation of the open meetings law.
In my view, our legislature made a logical decision when it allowed members of state and local boards and governing bod *247 ies to communicate-privately in-advance of public meetings, so long as the communications do not amount to a real-time meeting. It is inherently difficult for decision-making bodies to do all of their business in public. This observation holds true whether the. body is a board of supervisors, a legislature, an appellate court, the board of directors of a charity, or the management of a news media organization.
For these reasons, as well as those stated by Justice Waterman, I would affirm the district court.
WATERMAN and ZAGER, JJ., join this dissent.

. The majority’s agency theory not only is at odds with the nondelegation principle noted in Bunger but , also conflicts with well-established authority that the apparent authority doctrine cannot be used against a local government entity or official. See, e.g., City of Norwalk v. Conn. State Bd. of Labor Relations, 206 Conn. 449, 538 A.2d 694, 697 (1988) (holding that a municipality may not be bound to an agreement under apparent authority because "[ejvery person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers” (quoting John J. Brennan Constr, Corp. v. Shelton, 187 Conn. 695, 448 A.2d 180, 1.85 (1982))); Patrick Eng’g, Inc. v. City of Naperville, 364 Ill.Dec. 40, 976, N.E.2d 318, 330 (2012) (noting that "Illinois courts ... have never held that apparent authority may apply against municipalities” and discussing the-public policy reasons therefor); Potter v. Crawford, 797 A.2d 489, 492 (R.I. 2002) (‘‘[T]he authority of a public agent to bind a municipality must be actual ... [and] any representations made by such an agent lacking actual authority are not binding on the municipality.” (quoting Casa DiMario, Inc. v. Richardson, 763 A.2d 607, 610 (R.I. 2000))); 10 Eugene McQuillin, Municipal Corporations § 29:21, at 419-20 (3d rev. ed.2009) (collecting cases). Under Bunger, Administrator Furler as a matter of law lacked authority to vote for the reorganization. See also Dillon v. City of Davenport, 366 N.W.2d 918, 923-25 (Iowa 1985) (enforcing city’s settlement within actual authority extended to its attorney while determining that insurance term beyond his authority "must be deleted from the settlement agreement”). The foregoing authorities make clear that the apparent authority doctrine cannot be used to create such authority. Thus, Administrator Furler cannot be deemed to be a supervisor’s agent or proxy to trigger the open meeting requirements, of chapter 21. I fear today’s majority decision — which distorts basic principles of municipal law — will have unintended consequences.

. If the agency theory had been raised in district court, the defendants would have had the opportunity to respond and rebut it with testimony on Administrator Furler’s actual authority, or lack of it. ,

. Deliberate means "to ponder or think about with measured* careful consideration and often with formal discussion before reaching a decision or conclusion” or "to ponder issues and decisions carefully often with the aid of counsel and formal consultation ... THINK." Webster’s Third New International Dictionary 596 (unabr. ed.2002). These definitions make clear that a person can deliberate alone.

. The majority cites Valley Realty & Development, Inc. v. Town of Hartford, 165 Vt. 463, 685 A.2d 292, 296 (1996). That decision applied a statutory remedy provision unlike Iowa’s to' an evidentiary record bearing little resemblance to this Iowa litigation. Specifically, a real estate developer sought a refund of sewer fees on grounds that -the town had acquired land seven years earlier for the sewage treatment facility allegedly in violation of .Vermont’s open meetings law. Id. at 293. The Vermont statute allowed for " ‘appropriate injunctive relief or for- a. declaratory judgment’ at the request of the attorney general or a person aggrieved by the violation of the open meetings law.” Id. at 294 (quoting Vt. Stat. Ann. tit. 1, § 314(b)). The Vermont Supreme Court expressly noted the “remedy provisipn of the open meeting law does not provide, that actions taken in violation of the law are void.” Id. Rather, the statute provided that ho action “shall be considered binding except as taken or made at such open meeting.” Id. (quoting Vt. Stat. Ann. tit. 1, § 312(a)). The court .concluded that provision allowed subsequent ratification of the property acquisition at an open meeting. Id. at 295-96.- By contrast, the Iowa statute provides that the court "[s ~\hall void any action taken in violation of this Chapter” if the suit is filed within six months and the public interest in- enforcing the open meetings law Outweighs the public interest in the validity of the action. See I’owa-Code § 21.6(3)(c) (emphasis added). *246 Moreover, the Vermont court noted "there is no indication ... the land purchase decision [seven years earlier] was controversial or. that citizens who wanted to comment on- it were excluded from the decision-making process.” Valley Realty, 685 A.2d at 295. Indeed, the plaintiff had no “debate with the Town’s decision to buy the ... property or its plans to expand the sewage treatment facility.” Id. By contrast, the Warren County reorganization was timely challenged within thirty days by the plaintiff employees who had been terminated by highly controversial decisions allegedly made behind closed doors in violation of Iowa's open meetings law. Thus, Valley Realty is legally and factually inapposite. The majority’s failure to clarify the balancing test virtually guarantees another appeal in this contentious litigation if the district court on remand finds the Open Meetings Act was violated, while attorney fees for both sides continue to mount.